[Civ. No. 20683. Third Dist. Apr. 9, 1982.]

In re BRIAN S., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
BRIAN S., Defendant and Appellant.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Laurance S. Smith, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Nancy L. Sweet and Clayton S. Tanaka, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**SPARKS, J.**—The principal question in this appeal is whether the juvenile court is required to use the comparable civil measure of damages when fixing the amount of restitution to be paid to a victim of theft. We hold that the court may use any rational method of fixing the amount of restitution which is reasonably calculated to make the victim whole and which is consistent with the purpose of rehabilitation.

The juvenile court sustained a petition (Welf. & Inst. Code, § 602), charging the minor with burglary (Pen. Code, § 459), and misdemeanor vandalism. (Pen. Code, § 594, subd. (a).) He was declared a ward of the court, committed to a boy's ranch, and ordered to pay restitution to the victim for items taken during the burglary. On appeal, he contends

that the restitution order was improper because the trial judge (1) utilized the wrong standard in determining the amount to be paid; (2) failed to take into account the minor's financial status and ability to pay, and (3) incorrectly refused to consider the responsibility of other guilty parties. We reject these contentions and affirm.

On December 6, 1980, appellant, a companion named Darik, and one or two other minors broke into and entered Leslie Lloyd West's locked Greyhound bus, which was used for storage, and removed several items of personal property belonging to West. Later that night, appellant participated in a second break-in of West's bus. According to Darik, a third break-in, not involving appellant, took place on December 7th.

On January 8, 1981, appellant, Darik and another minor were cited for burglary. However, charges were brought against only appellant and Darik, and both were ultimately found to have committed the charged offenses.

At a restitution hearing, West submitted a list of the items that had been stolen, assigning to each a value he thought they were worth. The total loss claimed was $6,488.48. In rebuttal, appellant called an insurance adjuster who testified that his estimate of the value of the missing items was $4,035. The trial court ordered restitution in the amount of $6,294.48, stating that "The equities are clearly with the victim. . . . [Therefore] [t]o the extent that there is a difference of opinion in value, that difference is resolved in favor of the victim." Appellant was ordered to pay half of that restitution or $3,147.24.

I

The minor contends that the standard for fixing the amount of restitution in a juvenile dispositional order must be the same as the measure of damages recoverable in a civil case. We disagree.

Two of the purposes of the Juvenile Court Law are "to protect the public from criminal conduct by minors" and "to impose on the minor a sense of responsibility for his own acts." (Welf. & Inst. Code, § 202, subd. (a).) Both those purposes are advanced by requiring an offending minor to pay restitution to his victim. As the Court of Appeal noted in *People* v. *Goss* (1980) 109 Cal.App.3d 443, 460 [167 Cal.

Rptr. 224], "[t]he purposes of an order for restitution are rehabilitating the offender and deterring future criminal conduct [citations]."

In furtherance of those purposes, Welfare and Institutions Code section 731[1] expressly authorizes the juvenile judge to order a ward to pay restitution as part of his rehabilitation. Restitution imposed in a proper case and in an appropriate manner serves the salutory purpose of making the offender understand that he has harmed not merely society in the abstract but also individual human beings, and that he has a responsibility to make them whole. (*People* v. *Richards* (1976) 17 Cal.3d 614, 619 [131 Cal.Rptr. 537, 552 P.2d 97].)

On the other hand, restitution is not a substitute for a civil action to recover damages. (*People* v. *Richards, supra*, 17 Cal.3d at p. 621.) As a matter of statutory law, there is no merger of civil and criminal remedies. (Code Civ. Proc., § 32; Pen. Code, § 9.) Those disparate actions serve different interests. "A civil action is prosecuted by one party against another for the declaration, enforcement or protection of a right, or the redress or prevention of a wrong." (Code Civ. Proc., § 30.) In contrast, a criminal action is prosecuted in the name of the people of the State of California (Pen. Code, § 684), and is a "... proceeding by which a party charged with a public offense is accused and brought to trial and punishment." (Pen. Code, § 683.)[2]

Thus, the rights to be vindicated are different in civil and criminal proceedings. Consequently, the criminal process should not be "'... used to supplement a civil suit or as a threat to coerce the payment of a civil liability and thus reduce the criminal court to a collection agency.'" (*People* v. *Williams* (1966) 247 Cal.App.2d 394, 405 [55 Cal. Rptr. 550], quoting from *State* v. *Scherr* (1960) 9 Wis.2d 418 [101 N.W.2d 77].)

---

[1]Section 731 provides in pertinent part: "When a minor is adjudged a ward of the court on the ground that he or she is a person described by Section 602, the court may order any of the types of treatment referred to in Sections 727 and 730 and, in addition, may order the ward to make restitution ...."

[2]It is true, of course, that a proceeding in the juvenile court involving a penal offense is not technically a criminal proceeding. (Welf. & Inst. Code, § 203.) "However, the "'civil' label-of-convenience' (*In re Gault*, 387 U.S. 1, 50 [18 L.Ed.2d 527, 558, 87 S.Ct. 1428]) cannot obscure the quasi-criminal nature of juvenile proceedings, involving as they often do the possibility of a substantial loss of personal freedom." (*Joe Z.* v. *Superior Court* (1970) 3 Cal.3d 797, 801 [91 Cal.Rptr. 594, 478 P.2d 26].) For purposes of this analysis, therefore, the order of restitution must be deemed part of the quasi-criminal nature of juvenile proceeding.

Not only are the purposes of criminal and civil actions fundamentally different, but the procedures are also discordant. The round peg of civil damages simply will not fit into the square hole of criminal proceedings. If a restitution victim is limited to the civil measure of damages, surely he should also be entitled to its benefits as well. Such a procedural transmogrification, as we shall explain, would be incompatible with a criminal proceeding and would pointlessly convert each proceeding into a protracted minicivil trial.

■ In California, the civil measure of damages for conversion of personal property is set forth in Civil Code section 3336. That section provides: "The detriment caused by the wrongful conversion of personal property is presumed to be: [¶] First—The value of the property at the time of the conversion, with the interest from that time, or, an amount sufficient to indemnify the party injured for the loss which is the natural, reasonable and proximate result of the wrongful act complained of and which a proper degree of prudence on his part would not have averted; and [¶] Second—A fair compensation for the time and money properly expended in pursuit of the property."

That section was construed in *Myers* v. *Stephens* (1965) 233 Cal. App.2d 104, 116 [43 Cal.Rptr. 420], "Although the first part of section 3336 appears to provide for alternative measures of recovery, the first of the two measures, namely the value of the property converted at the time and place of conversion with interest from that time, is generally considered to be the appropriate measure of damages in a conversion action. [Citations.] The determination of damages under the alternative provision is resorted to only where the determination on the basis of value at the time of conversion would be manifestly unjust. [Citations.]"

■ Ordinarily "value of the property" at the time of the conversion is determined by its market value at the time. (*Woodbine* v. *Van Horn* (1946) 29 Cal.2d 95, 109 [173 P.2d 17].) However, "[w]here certain property has a peculiar value to a person recovering damages for deprivation thereof, or injury thereto, that may be deemed to be its value . . . against a willful wrongdoer." (Civ. Code, § 3355; see *Willard* v. *Valley Gas & Fuel Co.* (1915) 171 Cal. 9 [151 P. 286]; *King* v. *Karpe* (1959) 170 Cal.App.2d 344, 348-349 [338 P.2d 979].)

■ Finally, punitive damages may also be recovered in an action for conversion. (*Haigler* v. *Donnelly* (1941) 18 Cal.2d 674, 681-682 [117 P.2d 331].)

■ It is thus apparent that an owner in a civil action for conversion against a thief is entitled to more than just the market value of the stolen goods; he is also entitled to recover interest, compensation for the time and money spent in pursuit of his property, its special value in some cases, and to seek punitive damages.

■ The civil measure of damages, however, either cannot or should not be applied in criminal and quasi-criminal proceedings. An award of punitive damages in an order of restitution, for example, would constitute an illegal fine. The determination of interest and other sums recoverable in a civil action against a thief would needlessly interfere with expeditious disposition of criminal proceedings. In short, we decline to superimpose the complex law of damages upon juvenile restitution proceedings.

We have previously noted that one of the purposes of restitution is to make the victim whole. We hold the juvenile court is not required to determine what damages might be recoverable in a civil action but may instead use any rational method of fixing the amount of restitution which is reasonably calculated to make the victim whole and which is consistent with the purpose of rehabilitation.

Here the victim submitted a list of items stolen and based his opinion of value for most items upon the initial cost. Appellant's expert predicated his opinion on what he believed to be cash value of the stolen property.

Appellant claims that the victim's estimate was based on the cost of replacement measure, and should have been rejected by the trial judge in favor of his expert's estimate based on the fair market value measure. He asserts that the trial court abused its discretion in requiring him to pay $3,147.24 in restitution. However, on cross-examination, the minor's expert witness testified that the victim's figures "were not replacement value"—most of the values listed were "for actual purchase price" and "[o]thers he just tried to recall what they were worth. And being familiar with the price of many of them, I agreed. . . . So his original list of costs is not out of line. . . . [w]ith the exception of the newspapers." Those had been valued at $500. The expert suggested that

this $500 figure probably reflected personal value rather than actual or fair market value. The victim, however, testified that these newspapers, going back for 40 years, had appreciated in value as collector's items and his opinion as to their value was not based upon his original cost.

We conclude that the juvenile court could rationally use a cost basis for determining the amount of restitution for most items and was not required to use a fair market value standard at the time of the theft. On the other items, the court was also entitled to accept the victim's opinion as to value over that opined by appellant's witness. Since there was a factual and rational basis for the amount ordered repaid in restitution, we find no abuse of discretion.

## II

Appellant next argues that the trial judge incorrectly refused to take into account his ability to pay in ordering restitution. He relies on *People v. Kay* (1973) 36 Cal.App.3d 759 [111 Cal.Rptr. 894, 73 A.L.R.3d 1235], where the trial judge made restitution a condition of probation which was granted to the defendant as an alternative to a state prison sentence. The appellate court invalidated the restitution order and remanded the case with directions to the trial judge to consider the minor's ability to pay in determining restitution. The court held determination of the minor's financial status was necessary because "[a]n indigent . . . cannot be imprisoned because of his inability to pay a fine, even though the fine be imposed as a condition of probation." (*Id.*, at p. 763; see also *In re Antazo* (1970) 3 Cal.3d 100 [89 Cal.Rptr. 255, 473 P.2d 999].) *Kay* is distinguishable. The juvenile court here expressly recognized that a minor may not have sufficient present assets to make immediate restitution. The court, however, did not require any such immediate payment. Appellant is 18 years of age and there is no reason reflected in the record why he cannot obtain employment and make future restitution payments.[3] The amount of restitution ordered was not exorbitant and clearly will serve a rehabilitative purpose. Here, unlike *Kay*, restitution was ordered in addition, rather than as an alternative, to a disciplinary commitment. Appellant will not be imprisoned simply because of his inability to pay the restitution. If, in the future, appellant is truly unable to make restitution, the court can address the issue then and make an appropriate modification of its order.

[3]We note that the juvenile court may require a minor to go to work to earn money to make restitution. (Welf. & Inst. Code, § 730.)

III

Finally, appellant claims that the judge incorrectly refused to consider the responsibility of other culpable parties as a factor in ordering restitution. Again, we disagree.

While the juvenile court should take into account other culpable parties in imposing a restitution order, there are no rigid guidelines for apportionment. Responsibility of criminal confederates is merely one factor to be considered by the court in exercising its discretion. (*People v. Goss, supra*, 109 Cal.App.3d at p. 460.) In *Goss*, two persons were found guilty of causing a $150 loss, but only one was ordered to pay the entire amount of $150 in restitution. The court held the restitution order valid, distinguishing *People v. Kay, supra*, 36 Cal.App.3d 759. In *Kay* five persons were convicted of felony assault and felony battery in connection with a demonstration at a university hospital. The total amount of property damage was $40,356.97; the trial court required the five defendants to each pay one-fifth of the loss. The appellate court invalidated the order on the grounds that (1) 18 others had also been convicted of offenses arising from the demonstration; (2) a total of 123 persons had been involved in the demonstration; (3) there was no showing the particular defendants had ever been responsible for the property damage; and (4) the restitution requirement in *Kay* was not related to the crime for which the defendants were convicted. The *Goss* court concluded that its restitution order, unlike the one in *Kay*, was not "totally unwarranted by the facts." (*People v. Goss, supra*, 109 Cal.App.3d at p. 460.)

The restitution order in the instant case is more akin to the one in *Goss* than in *Kay*. The order clearly relates to the crime for which the minor was convicted. In addition, though a third juvenile was cited in addition to appellant and Darik, no charges have been brought against any other persons. This case is therefore easily distinguished from *Kay*, where 18 others were convicted and 123 persons may have contributed to the damage. Moreover, the judge here indicated he would modify the restitution order if others were later implicated, thereby reducing appellant's proportionate share of the financial responsibility. Since it would serve a rehabilitative purpose to require defendant to make the victim whole, we conclude the trial judge did not abuse his

discretion in ordering the minor to pay restitution for one-half of the losses suffered by the victim.[4]

The judgment (order) appealed from is affirmed.

Puglia, P. J., and Carr, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 30, 1982.

---

[4]The minor also claims that his due process rights will be violated if his share of liability is not reduced in accordance with his actual responsibility. This argument is meritless. The purposes of an order for restitution are, as we have already noted, rehabilitating the offender and deterring future criminal conduct; these purposes differ from those underlying a civil restitution order. (*People* v. *Richards, supra,* 17 Cal.3d at p. 620; *People* v. *Lent* (1975) 15 Cal.3d 481, 486 [124 Cal.Rptr. 905, 541 P.2d 545].) Due process is considered satisfied in the criminal law as long as a separate hearing is held to determine the value of the victim's loss. (*People* v. *Richards, supra,* 17 Cal.3d at p. 621.) As noted, however, there is no requirement that the order be limited to the exact amount of loss in which the individual is actually found culpable. (*People* v. *Richards, supra,* 17 Cal.3d at p. 619; *People* v. *Goss, supra,* 109 Cal.App.3d at p. 460.)