[No. D001515. Fourth Dist., Div. One. Dec. 13, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVIDA L. BAUMANN, Defendant and Appellant.

72

## Counsel

Stephen J. Perrello, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, John W. Carney and Peter Quon, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**STANIFORTH, J.**—Pursuant to a plea bargain, defendant Davida Baumann pled guilty to one of six counts of embezzlement charged in an information alleging each theft to be in excess of $200. In exchange for the plea, the

district attorney dismissed the five remaining counts. At the time the court accepted the plea, the court also took a *Harvey* waiver from Baumann. (*People* v. *Harvey* (1979) 25 Cal.3d 754 [159 Cal.Rptr. 696, 602 P.2d 396].)

A restitution hearing was conducted over several days at which witnesses, including Baumann, testified and evidence was taken on the issue of the extent of the victim's, Jack Siggson, loss. At the conclusion of the hearing, Baumann was granted probation on condition, inter alia, she make restitution to the victim in the amount of $20,419.15.

Baumann appeals the order of restitution contending it is excessive in that it is based not only on the count to which she pleaded guilty or on the dismissed counts alleged in the information but on uncharged offenses as well. Baumann also contends the order of restitution is violative of various constitutional rights. We find none of Baumann's contentions has merit and affirm the judgment and the condition of probation ordering restitution to the victim in the amount of $20,419.15.

FACTS

Baumann was a bookkeeper for Siggson Enterprises, a building construction contracting firm owned by Jack Siggson. As bookkeeper, Baumann's responsibilities included issuance of company checks. Baumann had Siggson sign the checks and Baumann then issued the checks using the company's check protector. Baumann alone was responsible for issuing company checks. Siggson would often sign the checks in blank permitting Baumann to complete the name of the payee or fill in the amount of the check later.

On July 7, 1983, Siggson was contacted by his bank concerning insufficient funds in the company account to cover several outstanding checks issued by the company. Siggson conducted an audit of the company ledgers and discovered at least 75 checks had been issued by Baumann which showed (1) the face amount on some of the checks had been altered; (2) the balance of the account was inaccurate and failed to reflect the proper balance from check to check; and (3) checks had been paid to Dave Baumann's Backhoe Company (a company owned and operated by Baumann's husband, Dave) and such checks were unauthorized.

Siggson confronted Baumann. Initially, Baumann admitted embezzling about $2,000. Later, Baumann admitted taking over $3,000. Negotiations between Siggson, Baumann and their attorneys ensued and Baumann signed an agreement settling Siggson's claims by agreeing to pay $12,313.82 to Siggson within two years. The agreement fell through, however, when Bau-

mann's husband refused to sign the agreement. Thereafter, Siggson contacted the district attorney's office. On August 31, 1983, the six-count complaint was issued charging Baumann with embezzlements from her employer (Pen. Code, § 508) from March 1980 to September 1983.

Baumann pleaded guilty to count one in exchange for dismissal of the remaining five counts in the complaint. The change of plea form signed by Baumann shows she made a *Harvey* waiver as part of the bargain. The reporter's transcript of Baumann's felony change of plea confirms Baumann's *Harvey* waiver. Specifically, the court asked Baumann:

"Do you agree then that I, as the sentencing judge, may consider your entire criminal history, the entire factual background of this case, including any unfiled, dismissed, stricken charges or allegations, and all the underlying facts thereof of this case in determining whether to grant you probation or imposing sentence upon you, ma'am?"

"THE DEFENDANT: Yes."

A probation report (Dec. 1, 1983) reflected the victim submitted 75 checks written by Baumann which were either unauthorized, altered, or made payable to Baumann's husband's business. The total loss claimed by the victim was approximately $25,000. The checks made payable to Dave Baumann's Backhoe alone totalled $9,866.22. All of these checks were endorsed by Baumann. The probation report reported Baumann adamantly denied taking more than $3,600 from Siggson's business. The report stated Baumann "feels that she could cooperate with probation, but only feels that she should be required to pay the $3600."

A lengthy hearing as to the exact extent of the victim's loss was conducted in February 1984. Several witnesses testified at the hearing, including both the victim and Baumann. Seventy-five checks were introduced into evidence to support the victim's claimed loss of over $25,000. At the conclusion of the hearing, the court found the evidence substantiated a loss to the victim of $20,419.

DISCUSSION

I

Baumann contends the restitution order made as a condition of probation was not authorized by her *Harvey* waiver because the waiver relates only to the dismissed counts in the complaint and because the term "resti-

tution" is not specifically mentioned in the waiver. This contention is without merit.

Baumann argues restitution is not contemplated by her *Harvey* waiver because the waiver related to "sentencing" only and not to a condition of probation. Scrutiny of the exact language of Baumann's waiver does not support this assertion. The court specifically advised Baumann the effect of the waiver would permit the sentencing judge to "consider [her] entire criminal history, the entire factual background of this case, *including any unfiled,* dismissed, stricken charges or allegations, and all the underlying facts thereof of this case *in determining whether to grant [her] probation* or imposing sentence upon [her]." (Italics added.) Thus the court specifically advised Baumann and Baumann specifically agreed unfiled charges related to the case could be considered by the court in determining whether to grant probation or impose sentence.

With respect to Baumann's argument restitution as a condition of probation was not contemplated by the waiver, we need only point out that probation as a sentencing alternative traditionally contains conditions. Penal Code section 1203, subdivision (a), defines probation as *"the suspension of the imposition or execution of a sentence and the order of conditional and revocable release in the community."* (Italics added.) (See *People* v. *Municipal Court* (1956) 145 Cal.App.2d 767, 771-772 [303 P.2d 375].)

Further, "[r]estitution as a condition of probation is favored by public policy both as a means of doing justice to the victim . . . and for rehabilitation of the offender." (*People* v. *Walmsley* (1985) 168 Cal.App.3d 636, 639 [214 Cal.Rptr. 170].)

The sole authority cited by Baumann seeking to support her claim the *Harvey* waiver does not extend to the unfiled charges considered by the court in fixing the amount of restitution is *People* v. *Myers* (1984) 157 Cal.App.3d 1162 [204 Cal.Rptr. 91]. *Myers* is not in point. Defendant Myers pleaded guilty to forgery with the understanding the unlawful possession of a completed negotiable instrument with intent to defraud charge (Pen. Code, § 475a) would be dismissed and his three prior felony convictions would not be filed against him. The plea bargain included a *Harvey* waiver as to the unfiled priors and the dismissed count. The defendant was sentenced to a midterm sentence after the sentencing court found he was statutorily ineligible for probation because of his prior felony convictions and the absence of special circumstances. (Cal. Rules of Court, rule 416; Pen. Code, § 1203, subd. (e)(4).) The *Myers* court held a *Harvey* waiver was ineffective to eliminate the "pleading and proving requirements neces-

sary to make a defendant statutorily ineligible to receive probation or to impose an enhancement term." (*Id.*, at p. 1168.)

In contrast to *Myers*, the prosecution was not required to plead and prove the amount of restitution that might be ordered in the event the court, in the exercise of its discretion, granted probation. As we shall document anon, due process requirements are satisfied by notice and opportunity to challenge at the sentencing/probation hearing.

## II

Baumann also challenges the order of restitution as a condition of probation on constitutional grounds claiming she is deprived of property without due process of law (Cal. Const., art. I, §§ 7, 15), she was entitled to trial by jury on the issue of the amount of restitution (Cal. Const., art. I, § 16), her privilege against self-incrimination was violated (Cal. Const., art. I, § 15), and she is subjected to the threat of imprisonment for a civil debt in violation of California Constitution, article I, section 10.

Penal Code section 1203.1 creates and limits the trial court's power to grant probation. This section grants broad discretion to the trial courts to prescribe the conditions of probation. (*People* v. *Lent* (1975) 15 Cal.3d 481, 486-487 [124 Cal.Rptr. 905, 541 P.2d 545]; *People* v. *Richards* (1976) 17 Cal.3d 614, 619-620 [131 Cal.Rptr. 537, 552 P.2d 97]; *People* v. *Walmsley, supra,* 168 Cal.App.3d 636, 639.) Section 1203.1 expressly allows the courts to "*provide for restitution in proper cases.*" The terms "restitution" or "reparation" alluded to in section 1203.1 have been judicially interpreted to mean "reimbursement to the victims of crime for actual loss flowing from the charged offense or from related misconduct." (*People* v. *Baker* (1974) 39 Cal.App.3d 550, 559 [113 Cal.Rptr. 248]; see also, *People* v. *Richards, supra,* 17 Cal.3d at pp. 619-620.) The court "is not limited to the transactions or the amounts of which defendant is actually convicted." (*People* v. *Miller* (1967) 256 Cal.App.2d 348, 353 [64 Cal.Rptr. 20].) Thus, "restitution, as a valid condition of probation, need not be limited to the direct consequences of the criminal acts of which a defendant is actually convicted." (*People* v. *Miller, supra,* at pp. 354-355.) (See also, *People* v. *Walmsley, supra,* 168 Cal.App.3d 636, 639; *People* v. *Lent, supra,* 15 Cal.3d 481, 486-487.)

The discretion to prescribe conditions of probation, however, is not unlimited. A condition of probation will not be deemed invalid, however, unless it " '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future crim-

inality . . . .' [Citation.] Conversely, a condition of probation which requires or forbids conduct which is not itself criminal is valid if that conduct is reasonably related to the crime of which the defendant was convicted or to future criminality." (*People* v. *Lent, supra,* 15 Cal.3d 481, 486, fn. omitted.) These criteria assist this reviewing court in its duty to determine whether the goals of section 1203.1 are promoted by the condition of probation being challenged on this appeal and point to this conclusion. There was no denial of due process by requiring reimbursement for sums greater than those involved in the one count to which Baumann pleaded guilty.

### III

 Baumann next contends the restitution order in the present case is invalid because the trial court failed to make express findings the "restitution order was primarily intended to rehabilitate" her. She asserts the court's expressed concern the victim be made whole evidences the court's failure to consider whether defendant's rehabilitation would be insured by an order of restitution.

 Without question one of the major goals of section 1203.1 "is to rehabilitate the criminal. Restitution imposed in a proper case and in an appropriate manner may serve the salutary purpose of making a criminal understand that [s]he has harmed not merely society in the abstract but also individual human beings, and that [s]he has a responsibility to make them whole." (*People* v. *Richards, supra,* 17 Cal.3d 614, 620.)

 Baumann has cited no authority for her assertion a court must specifically state for the record a restitution order as a condition of probation is imposed for rehabilitative purposes. *People* v. *Richards, supra,* 17 Cal.3d 614, directs us to a more relevant, legally approved basis for analyzing the rehabilitative aspect of any probation condition. "If a restitution order is to redirect a defendant to acceptance of responsibility for the crime [s]he has committed, the order must be directly related to that crime . . . . *It is obvious that unless the act for which the defendant is ordered to make restitution was committed with the same state of mind as the offense of which [s]he was convicted, this salutary rehabilitative effect cannot take place. No rehabilitative purpose can be served by forcing a person to confront tendencies which differ from those which induced his or [her] crime.*" (*Id.,* at p. 622, fn. omitted, italics added.)

Baumann cannot reasonably contend the uncharged offenses were *not* committed with the same state of mind as the offense to which she pleaded guilty. The evidence presented at the restitution hearing clearly demonstrat-

ed Baumann employed the same modus operandi to embezzle money from her employer in the uncharged incidents of embezzlement as she employed in the offense to which she pleaded guilty. The count to which defendant pleaded guilty was but one of a series of embezzlements from her employer committed over a period of time.

Baumann, however, argues "[t]he uncharged status of the 72 different transactions is enough of a reason to exclude them from consideration in the restitution order" because *Richards, supra,* disapproved "a restitution order based on '. . . unproved or disproved crimes or conduct.' (*Richards,* at p. 620.)" *Richards* is factually distinguishable. Furthermore, the language upon which Baumann would hang her legal hat is lifted out of context.

In *Richards,* restitution was ordered to a *noncrime* victim, an individual involved in a count of which the *defendant was acquitted.* By virtue of the acquittal, no criminal liability was established which could form the basis of restitution to the victim. "Thus, it appeared to the majority in *Richards* the trial judge ordered restitution for the 'ill-conceived' purpose of resolving the civil liability of the defendant." (*People* v. *Walmsley, supra,* 168 Cal.App.3d at p. 640.) ■ This court in *Walmsley* recognized the rule in *Richardson*: "Disposing of civil liability cannot be a function of restitution in a criminal case. To begin with, the criminal justice system is essentially incapable of determining that a defendant is in fact civilly liable, and if so, to what extent. A judge may infer from a jury verdict of guilt in a theft case that a defendant is liable to the crime victim. But a trial court cannot properly conclude that the defendant owes money to a third party for other unproved or disproved crimes or conduct." (*Richardson, supra,* at p. 620; *Walmsley, supra,* 168 Cal.App.3d at p. 640.)

■ In contrast, here, Baumann pleaded guilty to one count of embezzlement and agreed the court could consider her entire criminal history, the factual background of the case, including unfiled and dismissed charges or allegations. Restitution was ordered to be made to the victim for the count to which Baumann pleaded guilty as well as for the unfiled but related counts of embezzlement.

Baumann's reliance upon *In re Maxwell C.,* (1984) 159 Cal.App.3d 263 [205 Cal.Rptr. 310], is misplaced. In *Maxwell C.,* a minor was adjudged a ward of the court on his admission of receiving and concealing stolen property. (Pen. Code, § 496.) He was placed on probation upon condition, inter alia, he pay restitution to the victim for all losses and damages suffered by the victim in the burglary of the automobile from which the goods were stolen. On appeal, the order of restitution was reversed. The court held the juvenile court was without discretion to order the minor to pay restitution

for losses due to criminal conduct which was neither charged and found to be true nor admitted.

The reasoning and factual basis of *In re Maxwell C.*, distinguishes it from the present case. The *Maxwell C.* court reasoned "[w]ith minors as well as adults '[n]o rehabilitative purpose can be served by forcing a person to confront tendencies which differ from those which induced his crime . . . .' [*People* v. *Richards, supra,* 17 Cal.3d 614, 622.] The state of mind with which burglary or vandalism are committed is different than that required for receiving stolen property." (*In re Maxwell C., supra,* 159 Cal.App.3d 263, 266.) The court further reasoned: Due process considerations require evidence at trial or thereafter showing the requisite connection between the offense committed and all the losses for which restitution is ordered in determining whether a particular restitution order may exceed the actual losses from conduct which the accused was found to have committed. There was no evidence from which the juvenile court could have reasonably concluded the minor committed the crimes of burglary and vandalism with the same state of mind as that required for receiving stolen property. Nor was there evidence presented the minor was responsible for the burglary of the subject automobile.

In contrast to *Maxwell C.,* here there is overwhelming evidence the dismissed uncharged instances of embezzlement by Baumann were committed with the same state of mind as that present in the count of embezzlement to which she pleaded guilty.

## IV

■ Baumann next contends her due process rights were violated because the People were not required to prove beyond a reasonable doubt Baumann committed the uncharged offenses for which she was ordered to make restitution. No cited authority supports Baumann's contention the standard of proof beyond a reasonable doubt is applicable to sentencing hearings at which probation is the object of such hearings. ■ *People* v. *Takencareof* (1981) 119 Cal.App.3d 492 [174 Cal.Rptr. 112], held a defendant acquitted of a charge could not be confronted at sentencing with the same charge tested by the preponderance rule.

■ ■ The requirements of due process are satisfied by providing the defendant a hearing on ability to pay as well as the extent of the loss occasioned by the defendant's criminal conduct. An order of restitution as a condition of probation is not an abuse of discretion as long as the defendant is given an opportunity to present evidence rebutting her civil liability

at the sentencing hearing. (*People* v. *O'Rourke* (1980) 105 Cal.App.3d Supp. 1, 5-6 [165 Cal.Rptr. 92].) (See also *People* v. *Cervantes* (1984) 154 Cal.App.3d 353, 358 [201 Cal.Rptr. 187].)

 In *People* v. *Hartley* (1984) 163 Cal.App.3d 126, 130 [209 Cal.Rptr. 131], it was said: "Since a defendant will learn of the amount of restitution recommended when [s]he reviews the probation report prior to sentencing, the defendant bears the burden at the hearing of proving that amount exceeds the replacement or repair cost." (Fn. omitted.) "The purposes of an order for restitution are . . . rehabilitating the offender and deterring future criminal conduct; these purposes differ from those underlying a civil restitution order. . . . Due process is considered satisfied in the criminal law as long as a separate hearing is held to determine the value of the victim's loss. (*People* v. *Richards, supra,* 17 Cal.3d at p. 621.) As noted, however, there is no requirement that the order be limited to the exact amount of loss in which the individual is actually found culpable." (*In re Brian S.* (1982) 130 Cal.App.3d 523, 534, fn. 4 [181 Cal.Rptr. 778].)

In *In re Brian S.* (1982) 130 Cal.App.3d 523 [181 Cal.Rptr. 778], the minor challenged the restitution order imposed in his case contending the standard for fixing the amount of restitution in a juvenile dispositional order must be the same as the measure of damages recoverable in a civil case. The Court of Appeal disagreed, noting the purposes of criminal and civil actions are fundamentally different. The court in particular observed one of the purposes of restitution is to make the victim whole and concluded with the holding the court was required only to "use any rational method of fixing the amount of restitution which is reasonably calculated to make the victim whole and which is consistent with the purpose of rehabilitation." (*Id.,* at p. 531.)

For each of the foregoing reasons we conclude the standard of reasonable doubt utilized in criminal proceedings for proving a defendant committed the crime charged is not mandated in determining whether restitution should be ordered as a condition of probation or for determining the amount of restitution to be ordered as a condition of probation. We conclude proof by a preponderance of the evidence is the standard in the absence of a statute or decisional law to the contrary. (Evid. Code, § 115.) These reasons also support our conclusion Baumann's argument she is entitled to a jury trial as to the proper amount of restitution to be made to the victim is without merit.

 Baumann also contends the restitution condition of probation violates the proscription against imprisonment for a civil debt. This argument as well is without merit. Court ordered restitution has been upheld against constitutional attacks despite the appearance of being a criminal process to

enforce collection of a civil debt. (See, e.g., *United States* v. *Freeman* (D.D.C. 1957) 160 F.Supp. 532.) When probation is revoked for failure to make restitution as ordered, incarceration is imposed not for failure to meet the probationary condition of restitution but for the crime for which the defendant was convicted. The restriction in this line of reasoning is there must be a finding the defendant has an ability to pay before conditioning probation upon the payment of restitution. (See, e.g., *People* v. *Kay* (1973) 36 Cal.App.3d 759, 762-763 [111 Cal.Rptr. 894, 73 A.L.R.3d 1235].)

V

Baumann next contends the probation report should not have been considered by the court in determining the amount of restitution because the report was based upon hearsay and the report included conclusions by the probation officer drawn from extrajudicial statements. This argument is devoid of merit.

"Due process does not require a judge to draw sentencing information through the narrow net of courtroom evidence rules . . . sentencing judges are given virtually unlimited discretion as to the kind of information they can consider and the source from whence it comes." (Campbell, Law of Sentencing (1978) § 85, p. 275, fns. omitted.) Probation reports are among the permissible sentencing data the court may consider.

Evidence which is inadmissible on the issue of guilt "may nevertheless be received as bearing on the punishment to be imposed. (*Williams* v. *New York,* . . . 337 U.S. 241 . . . .)" (*People* v. *Peterson* (1973) 9 Cal.3d 717, 725 [108 Cal.Rptr. 835, 511 P.2d 1187].) *Williams* concluded: "The due-process clause should not be treated as a device for freezing the evidential procedure of sentencing in the mold of trial procedure. So to treat the due-process clause would hinder if not preclude all courts—state and federal—from making progressive efforts to improve the administration of criminal justice." (*Williams* v. *New York* (1949) 337 U.S. 241, 251 [93 L.Ed. 1337, 1344, 69 S.Ct. 1079].) This conclusion followed the observation probationary procedures are intended for rehabilitation of the convicted individual which call for an increase in discretionary powers in fixing punishments.

From *Williams,* our Supreme Court reasons: "While *Williams* does not require the same procedural safeguards at probation hearings as in the case of a trial on the issue of guilt, an applicant for probation is nevertheless entitled to relief on due process grounds if the hearing procedures are fundamentally unfair." (*People* v. *Peterson, supra,* 9 Cal.3d 717, 726.)

As earlier stated, the burden is on the defendant to show the restitution recommended in the presentencing report exceeds the losses in-

curred by the victim as a result of the criminal conduct involved. (*People v. Hartley, supra,* 163 Cal.App.3d 126, 130.) ▬▬ Baumann had ample opportunity before the hearing to review the probation report prepared in her case and was also afforded a full, extensive fair hearing on the issue of restitution. At the hearing, she cross-examined the probation officer with respect to the basis of the officer's conclusions and recommendations. In addition, the record of the hearing reveals the business records, checks or copies of these items which provided the informational basis of the probation report restitution recommendation were introduced into evidence by the People.

## VI

▬▬ Baumann contends the uncharged instances of embezzlement should not have been considered by the court in formulating the restitution order because Penal Code section 1203.04, enacted pursuant to Proposition 8, specifically provides in pertinent part: "(a) In every case where a person is *convicted* of a crime and is granted probation, the court shall require, as a condition of probation, that the person make restitution . . . .

"
. . . . . . . . . . . . . . . . . . . . . . . . .

"(d) . . . . '[R]estitution' means full or partial payment for . . . losses . . . caused by the defendant as a result of committing the crime for which he or she was *convicted.*" (Italics added.) Both the crime to which Baumann pleaded guilty as well as the uncharged crimes were committed prior to the effective date of Proposition 8 and thus are not governed by the laws enacted pursuant to the measure. (*People v. Smith* (1983) 34 Cal.3d 251, 263 [193 Cal.Rptr. 692, 667 P.2d 149].) Baumann, however, argues she is entitled to the benefit of the presumably more lenient punishment of section 1203.04. (*People v. Rossi* (1976) 18 Cal.3d 295, 303 [134 Cal.Rptr. 64, 555 P.2d 1313].)[1] Baumann contends section 1203.04 specifically limits restitution to losses caused by crimes of which a person is *convicted* only and thus excludes from restitution losses stemming from uncharged or unfiled offenses. In sum, Baumann claims section 1203.04 abrogates the rules of *Lent* and *Richards* which sanction, under certain circumstances, restitution orders for losses caused by criminal conduct for which a defendant is not convicted. While the argument at first blush is superficially attractive, it does not comport with the intent of the electorate in approving Proposition 8 or the Legislature in enacting section 1203.04 to implement the initiative.

---

[1]If Proposition 8 applies, it (and § 1203.04) authorizes restitution to the victims (see *People v. Clifton* (1985) 172 Cal.App.3d 1165 [219 Cal.Rptr. 904]) but is not a substitute for a civil judgment.

The preamble to Proposition 8, California Constitution, article I, section 28, subdivision (a), declares the rights of victims pervade the criminal justice system. This court recently observed "restitution rights afforded victims for the losses they suffer from the person convicted of crimes is the first of the two pillars upon which rests the Victims' Bill of Rights." (*Wood* v. *McGovern* (1985) 167 Cal.App.3d 772, 777 [213 Cal.Rptr. 498].) We wrote: "The first pillar encompasses: '. . . not only the right to restitution from the wrongdoers for financial losses suffered as a result of criminal acts' and the second pillar describes: '. . . but also the more basic expectation that persons who commit felonious acts causing injury to innocent victims will be appropriately detained in custody, tried by the courts, and sufficiently punished so that the public safety is protected and encouraged as a goal of highest importance.'" (*Id.,* at p. 777, quoting from Cal. Const., art. I, § 28, subd. (a).) Continuing: "Restitution rights are thus separately stated in the findings of the electorate from those provisions concerned with crime and criminal proceedings. In turn, section 28(b) concerning restitution is likewise in two parts. The first paragraph provides '. . . all persons who suffer losses as a result of criminal activity shall have the right to restitution from the persons convicted of the crimes for losses they suffer.' The second paragraph requires restitution be ordered from convicted persons in every case regardless of sentence or disposition absent extraordinary or compelling reasons to the contrary." (*Ibid.*)

In view of the strongly expressed concern for victims suffering losses as a result of a criminal activity an interpretation effectively limiting a victim's rights to restitution would be in derogation of the expressed intent and purposes of Proposition 8 and the provisions adopted by the Legislature to implement this measure. The language of section 1203.04 should not be so literally and so narrowly applied as Baumann suggests. In our view, section 1203.04 does not limit a victim's rights to restitution. Instead, victims are now constitutionally guaranteed the right to restitution whenever a person is convicted of a crime causing loss to the victim. The section does not, however, purport to limit or abrogate the judicially created right, based upon interpretations of section 1203.1, to restitution for losses caused by criminal activity for which the offender was not convicted. (*People* v. *Lent, supra,* 15 Cal.3d 481; *People* v. *Richards, supra,* 17 Cal.3d 614.) We have found no authority which holds the rules governing restitution orders as conditions of probation as discussed in *Lent* and *Richards* were intended to be repudiated or restricted by the electorate in approving Proposition 8. Recent appellate court cases inferentially suggest the continued viability of *Lent* and *Richards*. (See, e.g., *People* v. *Clifton, supra,* 172 Cal.App.3d 1165; *People* v. *Hartley, supra,* 163 Cal.App.3d 126; *People* v. *Walmsley, supra,* 168 Cal.App.3d 636.)

## VII

 Baumann finally contends even if this court concludes the uncharged offenses were properly considered by the court in fixing the amount of restitution as a condition of probation, the hearing was unfair because she "was not free to fully exculpate herself." Baumann says her privilege against self-incrimination was violated because she was not granted immunity from prosecution for the uncharged offenses and thus could not freely testify at the restitution hearing. Baumann relies upon *People* v. *Coleman* (1975) 13 Cal.3d 867 [120 Cal.Rptr. 384, 533 P.2d 1024], and *Daly* v. *Superior Court* (1977) 19 Cal.3d 132 [137 Cal.Rptr. 14, 560 P.2d 1193]. These cases lend little or no assistance to her arguments.

In *Coleman,* the Supreme Court reversed the order revoking probation. The defendant contended he was denied procedural due process because the probation revocation proceedings were held in advance of trial on the criminal charges and thus forced him to forego his opportunity to testify at the revocation hearing in order to avoid incriminating himself at the pending criminal trial. The Supreme Court declared: "[A]s a judicial rule of evidence that . . . upon timely objection the testimony of a probationer at a probation revocation hearing held prior to the disposition of criminal charges arising out of the alleged violation of the conditions of his probation, and any evidence derived from such testimony, is inadmissible against the probationer during subsequent proceedings on the related criminal charges, save for purposes of impeachment or rebuttal where the probationer's revocation hearing testimony or evidence derived therefrom and his testimony on direct examination at the criminal proceeding are so clearly inconsistent as to warrant the trial court's admission of the revocation hearing testimony or its fruits in order to reveal to the trier of fact the probability that the probationer has committed perjury at either the trial or the revocation hearing." (13 Cal.3d at p. 889.) The court, however, admonished: "We . . . wish to make clear that *this exclusionary rule does not apply to any proceedings other than the formal, dispositive probation revocation hearing.*" (*Id.,* at p. 894, italics added.) *Coleman,* thus, is inapplicable to this case.

 Baumann contends she wanted to give testimony to inculpate the victim and argues testimony which would have exculpated her on some transactions could have inculpated her on others and this would have subjected her to risk of prosecution on the latter transactions. She asserts *Daly* v. *Superior Court, supra,* 19 Cal.3d 132 [137 Cal.Rptr. 14, 560 P.2d 1193], supports her argument this court should hold she is entitled to immunity.

In *Daly,* a civil action to recover damages for wrongful death, intentional infliction of mental distress and battery was brought against several defend-

ants. The defendants being deposed refused to answer on the grounds of self-incrimination. The trial court denied the plaintiffs' motion to compel defendants to answer under a protective order granting them use immunity on the ground immunity would not be consistent with legislative intent and the effective enforcement of the criminal laws. Although the parties settled the case, the Supreme Court held that if in the future course of the underlying litigation defendants again asserted their privilege against self-incrimination, plaintiffs would be entitled under certain circumstances to a protective order granting defendants use and derivative use immunity. The court held the immunity order should not be granted unless certain conditions were fulfilled which include notification to prosecuting officials of the nature and scope of the proposed immunity, opportunity for those officials to object to the grant of immunity and the absence of any such objection by these officials. (*Id.*, at pp. 147-149.)

In the present case, Baumann did not assert her Fifth Amendment privilege at the restitution hearing, choosing instead to testify. Furthermore, she did not request, as *Daly* requires, use immunity from prosecution on the uncharged offense. Consequently, we find Baumann's arguments on this issue to be both untimely and without merit.

DISPOSITION

The judgment is in all respects affirmed.

Kremer, P. J., and Lewis, J., concurred.

A petition for a rehearing was denied December 31, 1985, and appellant's petition for review by the Supreme Court was denied March 26, 1986.