Filed 1/12/15  P. v. Hawkins CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>ANTWON MAURICE HAWKINS,<br><br>　　　Defendant and Appellant. | B253078<br><br>(Los Angeles County<br>Super. Ct. No. LA073961) |

　　　APPEAL from an order of the Superior Court of Los Angeles County, Jessica Perrin Silvers, Judge.  Affirmed.

　　　A. William Bartz, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

　　　Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Linda C. Johnson and Theresa A. Patterson, Deputy Attorneys General, for Plaintiff and Respondent.

_____

**INTRODUCTION**

Pursuant to a negotiated plea, defendant Antwon Maurice Hawkins was convicted of first degree burglary with a prior prison term enhancement and sentenced to an aggregate state prison term of five years. After a subsequent restitution hearing, the trial court ordered Hawkins to pay $2,887.57 in victim restitution (Pen. Code, § 1202.4).[1] On appeal, Hawkins contends the trial court committed judicial misconduct during the restitution hearing and abused its discretion in fixing the amount of restitution. The principal issue before us is whether the trial court erred in calculating restitution for a stolen iPad based on the price the victim paid for the iPad two years before the theft. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

**A.** *The Burglary and Hawkins's Plea Agreement*

On April 26, 2013, Hawkins entered the home of Senio Bolanos and took $1,500 in cash, a handgun and an iPad2, which were never recovered. On April 30, 2013, Hawkins was charged in a complaint with first degree burglary, person present (§ 459), second degree robbery (§ 211) and assault with a firearm (§ 245, subd. (a)(2)). The complaint also alleged that Hawkins had previously served a separate prison term for a felony, and he had not remained free of prison custody for a period of five years (§ 667.5, subd. (b)).

On September 25, 2013, Hawkins entered into a negotiated plea agreement, under which he pleaded no contest to count 1 of the complaint for first degree burglary and admitted the one-year prior alleged pursuant to section 667.5, subdivision (b). The court sentenced Hawkins to a five-year prison sentence, imposing the four-year middle term for

---

[1]     Unless otherwise stated, further statutory references are to the Penal Code.

first degree burglary and one year for the prior prison term enhancement. As part of the negotiated plea, the court granted the People's motion to dismiss the "person present" allegation as to count 1, and the remaining counts and allegations.

## B. *The Restitution Hearing*

A restitution hearing was held on November 13, 2013. The People's position at the hearing was that Hawkins should pay Bolanos $986.54 for the iPad2 based on the original purchase price, $401.03 for the gun, and $1,500 cash, for a total of $2,887.57. As to the iPad2, Hawkins asserted that Bolanos was only entitled to recover the cost of replacing the stolen iPad2 with a new one. Hawkins's counsel offered to stipulate that Hawkins would pay the price of a new iPad, "whatever the price of the new one is," because the iPad2 was no longer available. However, Hawkins never provided any evidence to the court as to the actual cost of a new iPad, only asserting that it would be less than the initial $986 cost of Bolanos's iPad2. Hawkins's counsel suggested that he could get the cost information from Apple, stating: "I can go on to Apple to tell you."

In response, the trial judge indicated she intended to order Hawkins to pay Bolanos what he paid for the iPad2. Hawkins's counsel then requested a hearing. The People proceeded to call Bolanos to testify about his loss. On direct examination, the prosecutor showed Bolanos a six-page document that included receipts for the iPad2 and the gun. After reviewing the document, Bolanos testified he had purchased the gun for $401, and that the missing $1,500 in cash was part of a $2,310 check Bolanos had received in February 2013. The value of the gun and missing cash are not before us.

As to the iPad2, Bolanos testified that he purchased it in approximately November 2011 for $986, including taxes. At the time it was stolen, the iPad2 was functioning properly and had no dents or marks on it. Bolanos had placed a cover on the iPad, but the price of the cover was not included in the $986. After it was stolen, Bolanos did not look for a replacement iPad or at prices for a new iPad. When asked whether he could buy a new iPad with similar specifications for $829, Bolanos responded, "I don't have any idea."

Hawkins failed to provide any evidence to the court as to the current purchase price of a replacement iPad, instead seeking to elicit this information from Bolanos notwithstanding Bolanos's testimony that he had no knowledge of current iPad prices.

## C. *The Court's Rulings on Objections*

During the course of Bolanos's testimony, defense counsel asserted numerous objections, each of which was overruled by the court. During Bolanos's direct examination, Hawkins's counsel objected to the prosecutor's introduction of the six-page document with receipts citing due process grounds on the basis that he had not previously seen the document. The court overruled the objection and allowed Hawkins's attorney to review the document while Bolanos testified. Hawkins's counsel also objected to the receipts as "secondary evidence,"[2] which the court overruled. Hawkins's counsel objected to Bolanos's testimony about the purchase price of the iPad2 as vague and a violation of due process on the basis that Bolanos first testified that the receipt showed a cost of $468, then $968, and then he corrected himself to say $986."[3] The trial court overruled the objections.[4]

On cross-examination, the court sustained the People's objections to questions going to the value of the iPad2 at the time it was stolen after Bolanos testified that he did not look at prices for a replacement iPad. The court rejected the request by Hawkins's counsel to make an offer of proof as to the relevance of Bolanos's testimony on the cost of a new iPad. The court also made several comments expressing frustration with Hawkins's counsel. For example, after cutting off cross-examination on Bolanos's knowledge of the value of his iPad at the time it was stolen, when counsel continued to

---

[2]     The receipt had been downloaded from the iPad2 before it was stolen.

[3]     The trial court commented that the receipt was "very pale and it's hard to read."

[4]     The court also overruled counsel's objection to the court shifting the burden of proof to Hawkins to counter the evidence of loss, and it cut off questioning as to Bolanos's level of education on relevance grounds.

4

argue his position, the trial court stated: "I heard the question. I made the ruling. If you don't like it, that's just too bad. Move to another topic."

After further inquiry about the value of the gun and the amount of money that had been stolen, the court denied defense counsel's request to continue his cross-examination. The court stated: "No. Restitution is ordered in the amount of [$]2,800." The court did not allow any argument by counsel.

## DISCUSSION

### A. *Judicial Misconduct*

#### 1. Hawkins Waived His Right To Object to Asserted Judicial Misconduct

Hawkins contends the trial court committed judicial misconduct in the manner in which it conducted the restitution hearing. While Hawkins does not dispute that he failed to object on this basis below, he claims his failure to object is excused because any objection would have been futile.

Where counsel does not complain or object that evidentiary rulings reflect judicial bias, the party forfeits the claim on appeal. (*People v. Pearson* (2013) 56 Cal.4th 393, 447; *People v. Snow* (2003) 30 Cal.4th 43, 77-78.) One exception to this general rule is where objecting would be futile. (*See People v. Sturm* (2006) 37 Cal.4th 1218, 1237 [finding it would have been futile for defendant to raise with the judge his derogatory comments and objections where it could cause the judge to be more negative toward defendant in front of the jury].)

In this case, Hawkins's counsel failed to raise any objections with the court as to asserted judicial misconduct. While it is true that raising a concern with the trial judge that she was being biased against Hawkins or his counsel would likely not have changed the court's conduct, if Hawkins believed the judge was biased against him, he could have raised this by filing a motion to disqualify the judge under Code of Civil Procedure sections 170.1 and 170.3, which he failed to do. (See *People v. Scott* (1997) 15 Cal.4th

5

1188, 1207 [finding waiver of objection to lack of impartiality where attorney failed to seek disqualification under Code of Civil Procedure section 170.3].)

### 2. The Trial Court Did Not Commit Judicial Misconduct

While Hawkins forfeited his claim of judicial misconduct, we nevertheless find that the court did not commit any acts of judicial misconduct. A court commits misconduct if it creates the impression that it is denigrating the defense, making discourteous and disparaging remarks to defense counsel, or otherwise allying itself with the prosecution. (*People v. Blacksher* (2011) 52 Cal.4th 769, 824; *People v. Snow*, *supra*, 30 Cal.4th at p. 78.) However, even where a trial court makes comments that are "'better left unsaid,'" the test is whether the judge's behavior was so prejudicial that it denied the defendant a fair trial or hearing. (*Snow*, *supra*, at pp. 78, 82 [finding trial court's behavior "imperfect," but not rising to a level where it deprived defendant of a fair trial].)

Hawkins contends the trial judge was biased against the defense given her "evident hostility" towards Hawkins's counsel, as shown by her overruling defense counsel's objections and terminating his cross-examination of Bolanos. However, "a trial court's numerous rulings against a party—even when erroneous—do not establish a charge of judicial bias, especially when they are subject to review." (*People v. Guerra* (2006) 37 Cal.4th 1067, 1112, disapproved on another ground in *People v. Rundle* (2008) 43 Cal.4th 76, 151; see also *People v. Pearson*, *supra*, 56 Cal.4th at p. 447.) In this case, the court's rulings against Hawkins on objections do not rise to the level of bias. Neither does the judge's denial of further cross-examination of Bolanos constitute misconduct, where Hawkins's counsel was seeking to inquire as to the cost to purchase a new iPad after Bolanos testified he had no knowledge of the price of a new iPad. (See Evid. Code, § 702, subd. (a) ["the testimony of a witness concerning a particular matter is inadmissible unless he has personal knowledge of the matter"].) Likewise, while the court at time expressed impatience with defense counsel, the court did not display any overt bias toward Hawkins or his counsel that would constitute misconduct. (*People v. Snow*, *supra*, 30 Cal.4th at p. 79.)

**B.** *Restitution Award*

Hawkins contends that the restitution order should be reversed because the trial court erred in awarding Bolanos the original purchase price of the iPad 2.

### 1. Governing Law on Restitution

Under Proposition 8, also known as The Victims' Bill of Rights, crime victims have a right to recover restitution directly from persons convicted of the crimes for losses they suffer. (Cal. Const., art. I, § 28, subd. (b)(13)(B); *People v. Giordano* (2007) 42 Cal.4th 644, 652.) It provides: "Restitution shall be ordered from the convicted wrongdoer in every case, regardless of the sentence or disposition imposed, in which a crime victim suffers a loss." (Cal. Const., art. I, § 28, subd. (b)(13)(B).) Section 1202.4, subdivision (f), similarly provides, "in every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court." Further, the court "shall order full restitution unless it finds compelling and extraordinary reasons for not doing so and states them on the record." (*Ibid.*)

"'In keeping with the [voters'] "unequivocal intention" that victim restitution be made, statutory provisions implementing the constitutional directive have been broadly and liberally construed.' [Citation.]" (*People v. Stanley* (2012) 54 Cal.4th 734, 737 [affirming trial court's award to victim for costs to repair vandalized truck where amount was three times what victim paid for the truck 18 months earlier, finding it was appropriate to return truck to former condition]; see also *Luis M. v. Superior Court* (2014) 59 Cal.4th 300, 305.) Once the victim makes a prima facie showing of economic loss incurred as a result of the defendant's criminal acts, the burden shifts to the defendant to demonstrate that the amount of loss is a different amount from that claimed by the victim. (*People v. Chappelone* (2010) 183 Cal.App.4th 1159, 1172; *People v. Prosser* (2007) 157 Cal.App.4th 682, 690-691.)

Section 1202.4 provides for reimbursement for the value of stolen or damaged property.  (§ 1202.4, subd. (f)(3)(A).)  As to the restitution amount, section 1202.4 provides that "[t]he value of stolen or damaged property shall be *the replacement cost of like property,* or the actual cost of repairing the property when repair is possible."  (*Ibid.*, italics added.)  It is this language that Hawkins relies upon in arguing that the replacement cost for the stolen iPad2 is less than what Bolanos paid two years ago, citing *People v. Thygesen* (1999) 69 Cal.App.4th 988.

In *Thygesen*, the court held that the trial court should have ordered payment for a replacement *used* cement mixer where the stolen cement mixer was estimated to be 10 years old, stating:  "If [the victim] were a car rental agency that lost a 1995 Ford Taurus, it would be entitled to the replacement value of a similar 1995 Ford Taurus, not a 1999 model."  (*People v. Thygesen*, *supra*, 69 Cal.App.4th at p. 995.)  In this case, Hawkins's argument is that the used iPad2 cost more two years ago than what it would cost to replace it now with a new iPad, so the current price is the best estimate of replacement cost.

In response, the People cite cases where courts have used the purchase price of the stolen item as an approximation of replacement cost in the absence of other evidence.  (See, e.g., *People v. Foster* (1993) 14 Cal.App.4th 939, 943, 946 [upholding valuation of stolen Persian rug at $8,000 purchase price]; *In re Brian S*. (1982) 130 Cal.App.3d 523, 532 [upholding juvenile court's use of cost basis instead of fair market value for stolen items].)  As we explain below, the trial court properly used this measure of replacement cost based on the evidence before it.

## 2.  Standard of Review

We review a trial court's restitution order for abuse of discretion.  (*People v. Giordano*, *supra*, 42 Cal.4th at p. 663.)  Under this standard, "while a trial court has broad discretion to choose a method for calculating the amount of restitution, it must employ a method that is rationally designed to determine the surviving victim's

8

economic loss." (*Id*. at pp. 663-664; see also *People v. Chappelone*, *supra*, 183 Cal.App.4th at p. 1173.)

### 3. The Trial Court Did Not Abuse Its Discretion by Using the Initial Purchase Price of the iPad2

In this case, the People made a prima facie showing of Bolanos's economic loss for the iPad2 based on his testimony and the receipt reflecting a purchase price of $986. Bolanos testified that his iPad was functioning properly and had no dents or other damage. Thus, as in *Foster* and *Brian S*., the purchase price of the iPad2 provided a fair approximation of the cost to buy a new iPad to replace the stolen iPad2. (See *People v. Foster*, *supra*, 14 Cal.App.4th at p. 946; *In re Brian S*., *supra*, 130 Cal.App.3d at p. 532.) Once Bolanos made a prima facie showing of his economic loss, the burden shifted to Hawkins to disprove the amount of the loss. (*See People v. Chappelone*, *supra*, 183 Cal.App.4th at p. 1172.)

Hawkins relies on the language of section 1202.4, subdivision (f), which requires restitution to cover the "replacement cost of like property," to argue that the replacement value for the iPad2 in this case should be based on the lower price of a new iPad, and not on the amount Bolanos paid for his iPad2. This argument would be persuasive if Hawkins submitted any evidence to the court showing that the cost to replace the stolen iPad2 with a new comparable iPad was less than the $986 initially paid by Bolanos. But Hawkins failed to present any evidence, instead offering only to "go on to Apple" to get the price of a replacement iPad.[5]

---

[5]     Hawkins also relies on *People v. Chappelone*, *supra*, 183 Cal.App.4th at pages 1175-1176, for its holding that a victim should not obtain a windfall from restitution. In *Chappelone*, the court reversed a restitution award to Target based on the last retail price of the stolen items, where the stolen items had been damaged or discounted for sale. However, absent evidence of a lower purchase price for a new iPad, Hawkins cannot support his claim that Bolanos would gain a windfall from recovery of his initial purchase price for the iPad2.

Hawkins argues that the trial court prevented him from continuing to cross-examine Bolanos as to the replacement cost of the iPad2. But Bolanos had already testified that he did not look into prices for a replacement, and that he had no idea whether a new iPad would cost less than what he had paid. Thus, Bolanos could only speculate as to whether a new iPad would cost less than his stolen iPad2. (See *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 864 [rejecting expert's speculation that petroleum companies conspired to raise gasoline prices by restricting supply, holding, "[s]peculation, however, is not evidence"]; *Carlsen v. Koivumaki* (2014) 227 Cal.App.4th 879, 889, 892 [holding speculation as to what caused victim to fall off cliff was not evidence sufficient to create triable issue of material fact, affirming grant of summary adjudication of assault and battery claim].)

The argument made by Hawkins's counsel in his reply brief is telling: "If the trial court wanted to comply with the law regarding determining replacement cost, it would have been a very simple and quick thing to do by logging on to the Apple website to determine the purchase price of a brand new iPad 2." It was not the job of the trial court to research the price of a new iPad, nor would it have been proper. Rather, the court acted within its discretion in ordering restitution based on the evidence before it, in this case, the purchase price of the iPad 2.

## DISPOSITION

The order is affirmed.

FEUER, J.[*]

We concur:

PERLUSS, P. J.

ZELON, J.

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11