Filed 10/5/18; pub. & mod. order 10/12/18 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>　　　　v.<br><br>MARQUETTE LASHON HUDSON,<br><br>　　Defendant and Appellant. | F074016<br><br>(Super. Ct. No. 1484556)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Stanislaus County. Ricardo Cordova, Judge.

Allen G. Weinberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Kathleen A. McKenna and John W. Powell, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

Appellant Marquette Lashon Hudson was convicted by a jury of one count of mayhem in violation of Penal Code section 203.[1]  Afterwards, in a bifurcated trial, the court found true allegations that Hudson suffered a prior felony conviction within the meaning of section 667, subdivision (d), and a prior felony conviction within the meaning of section 667, subdivision (a).  The trial court sentenced appellant to 21 years in state prison.  Hudson's sentence consisted of the following:  the upper term of eight years for the single count of mayhem, doubled to 16 years as a result of the section 667, subdivision (d), enhancement, plus five years for the section 667, subdivision (a), enhancement.

On appeal, Hudson does not challenge his conviction for mayhem.  Rather, he contends that the trial court engaged in improper judicial factfinding to determine his prior conviction of assault from 1991 under section 245, subdivision (a)(1) (section 245(a)(1)), was a serious felony and a strike under California's "Three Strikes" law, violating his Sixth Amendment right to a jury trial.  Additionally, Hudson seeks to correct several clerical errors in the judgment.  Upon review, we hold that, based on the recent California Supreme Court decision in *People v. Gallardo* (2017) 4 Cal.5th 120, 137 (*Gallardo*), the court erred in relying upon the preliminary hearing transcript to support the finding that the prior felony was a serious felony, and remand the matter to the trial court for further proceedings consistent with our holdings set forth below.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    Factual Background

Hudson and his family lived with his mother.  During an argument, Hudson punched his mother in the back of the head and knocked her to the kitchen floor.  He then jumped on her back, dragged her through the family room, pushed her into a sliding glass

---

[1]    Unless otherwise stated, all further statutory references are to the Penal Code.

door, slammed her head against the floor several times, and bit off a section of her right ear. Her earlobe was surgically reattached later that evening. However, parts of the ear could not be reattached or repaired.

## II. Procedural Background

After the jury returned a verdict of guilty on the mayhem count, the court held a separate trial without a jury in which the prosecution attempted to prove that the prior conviction for assault under section 245 (a)(1) was a serious felony. Former section 245(a)(1) punished both assault committed by means "likely to produce great bodily injury," or by use of "a deadly weapon … other than a firearm." Although the felony could be committed in one of two ways, "[o]nly the latter version[, i.e., assault with a deadly weapon,] qualifies as a serious felony." (*People v. Delgado* (2008) 43 Cal.4th 1059, 1063 (*Delgado*).) The prosecution, therefore, presented several exhibits to show that the prior violation of section 245(a)(1) was for an assault with a deadly weapon.

In the first amended complaint, dated August 1, 1990, it stated the assault charge was "a violation of Section 245(a)(1) …, in that said defendant(s) did then and there assault [victim], and by means of force likely to produce great bodily injury." The count as stated in the first amended complaint only charged Hudson with assault based on a theory involving great bodily injury and did not rely on a theory of use of a deadly weapon.

An information was thereafter filed on August 24, 1990. The second count of the information again omitted language charging section 245(a)(1) based on assault with a deadly weapon. However, handwritten notes on the information added the following language to the charge: "defendants did then and there assault [victim] *with a deadly weapon, to wit: a pipe*, and by means of force likely to produce great bodily injury."

3.

(Italics added.) Next to the handwritten language were the initials "WMcK/SC."[2] According to the report and sentence from the offense, Hudson pled nolo contendere on February 27, 1991, to "section 245(a)(1) … as charged in Count 2 of the Information." However, the document does not specify the theory, if any, upon which Hudson pled guilty to section 245(a)(1).

At the bifurcated trial, the prosecution presented two forms, the abstract of judgment and fingerprint card, which describe the crime committed under section 245(a)(1) as assault with a deadly weapon.[3] The court was also provided the transcript of the preliminary hearing, during which the victim described Hudson beating him with a metal pipe.

The trial court reviewed the materials submitted and noted that "[t]here is reference in the prelim[inary hearing] transcript to a pipe being used by [Hudson], and the plea was to Count 2 of the information, … Hudson and his codefendants assaulted the alleged victim … with a deadly weapon, to wit, a pipe." The court then found the prior conviction met the legal requirements necessary to qualify as a strike and a serious prior felony.

## DISCUSSION

### I.     Determination Whether the Prior Conviction Qualifies as a Serious Felony

Hudson does not dispute that he has a prior conviction under section 245(a)(1). Rather, he challenges the trial court's finding that this conviction qualified as a serious felony and strike for sentencing purposes.

---

[2]      Appellant contends that the initials are those of the trial court judge, William McKinstry, and the courtroom clerk, Sue Caine.

[3]      On both forms, the space for describing the nature of the crime is small. On the abstract of judgment form, the name of the crime was abbreviated to "Assault w/deadly weapon" and the fingerprint card stated "Ct2 PC245(a) ADW."

4.

"The People must prove all elements of an alleged sentence enhancement beyond a reasonable doubt." (*People v. Miles* (2008) 43 Cal.4th 1074, 1082.) "On review, we examine the record in the light most favorable to the judgment to ascertain whether it is supported by substantial evidence. In other words, we determine whether a rational trier of fact could have found that the prosecution sustained its burden of proving the elements of the sentence enhancement beyond a reasonable doubt." (*Delgado*, *supra*, 43 Cal.4th at p. 1067.)

In 1991, when Hudson pled no contest in the prior case, former section 245(a)(1) provided: "Every person who commits an assault upon the person of another with a deadly weapon or instrument other than a firearm or by any means of force likely to produce great bodily injury is punished by imprisonment in the state prison for two, three or four years …." Under section 1192.7, subdivision (c)(31), assault with a deadly weapon qualifies as a serious felony and is, in turn, a strike under section 667, subdivisions (d)(1) and (e)(1). (*Delgado*, *supra*, 43 Cal.4th at p. 1065.) Assault with force likely to cause great bodily injury is not a serious felony, and, in turn, is not a strike. (*Ibid.*) Therefore, the application of the prior strike enhancement alleged in the instant information hinged on whether Hudson's prior conviction under section 245 (a)(1) was for assault with a deadly weapon or assault with force likely to cause great bodily injury.

### A.    *Descamps v. United States*

The United States Supreme Court in *Descamps v. United States* (2013) 570 U.S. 254, 257 (*Descamps*), held that under the Sixth Amendment to the federal Constitution, courts must employ a "categorical" or elements-based approach in applying recidivist sentence enhancements, i.e., sentence enhancements based on a defendant's prior convictions. Under the categorical approach mandated by the Sixth Amendment, courts compare the elements of the statute underlying the prior conviction to the elements of the applicable, triggering offense enumerated in the recidivist enhancement statute at issue, here California's Three Strikes law. (*People v. Navarette* (2016) 4 Cal.App.5th 829,

5.

851–852.)  The prior conviction can be used to enhance the defendant's sentence only if its elements are the same as, or narrower than, those of the triggering offense enumerated in the recidivist punishment statute.  (*Id.* at p. 851.)

*Descamps* explains this approach is necessary because, consistent with the right to jury trial guaranteed by the Sixth Amendment, sentencing courts may only enhance a defendant's sentence above the statutory maximum applicable to his current offense based on facts proven to a jury beyond a reasonable doubt, i.e., facts necessarily implied by the elements of a prior conviction.  Conversely, a sentencing court cannot enhance a defendant's sentence above the applicable statutory maximum based on "non-elemental fact[s]," i.e., facts not necessarily and unanimously found beyond a reasonable doubt by a jury but, rather, gleaned from the record by the sentencing court itself.  (*Descamps*, *supra*, 570 U.S. at pp. 268–270 [under federal Constitution's Sixth Amendment right to jury trial, the only facts related to a prior conviction that a sentencing court can rely on in imposing recidivist punishment are the facts necessarily implied by the elements of the relevant prior offense]; *People v. Navarette*, *supra*, 4 Cal.App.5th at p. 852, fn. omitted ["*Descamps* makes clear that … Sixth Amendment principles … foreclose any factfinding by the sentencing court beyond the facts necessarily implied by the elements of the prior offense"]; *People v. Marin* (2015) 240 Cal.App.4th 1344, 1363 [in imposing a recidivist enhancement, "judicial factfinding beyond the elements of the [prior] offense, is incompatible with the United States Supreme Court's view of the Sixth Amendment right to a jury trial"].)

*Descamps* further explains that when the statute underlying a defendant's prior conviction contains alternative elements, such that the specific elements forming the basis of the defendant's prior conviction cannot be discerned based on the statute of conviction alone, courts must employ a "modified categorical" approach.  (*Descamps*, *supra*, 570 U.S. at pp. 261–265.)  Under the modified categorical approach, courts can consult a limited range of approved record-based documents (i.e., charging documents and jury

instructions) to identify the elements that formed the basis of a defendant's prior conviction. (*Id.* at pp. 263–264 [noting that the modified categorical approach "retains the categorical approach's central feature: a focus on the elements, rather than the facts, of a crime"].) *Descamps* acknowledged that sentencing courts would, at times, be faced with statutes of conviction that set forth "'alternative means'" of committing a particular offense (i.e., various means under a single overarching element), rather than actual "'alternative elements.'" (*Id.* at p. 264, fn. 2.) However, *Descamps* explained that this was not a "real-world reason to worry" because courts could nonetheless consult the charging document, jury instructions, plea colloquy, and plea agreement as permitted under the modified categorical approach, to ascertain the actual elements that formed the basis of the prior conviction. (*Ibid.*)

**B.     Application of *Descamps* to Section 245(a)(1)**

The California Supreme Court recently addressed the application of *Descamps* to section 245(a)(1) in *Gallardo*, *supra*, 4 Cal.5th 120. In *Gallardo*, the California Supreme Court overruled its prior authorization allowing "trial courts to make findings about the conduct that 'realistically' gave rise to a defendant's prior conviction." (*Gallardo*, *supra*, at p. 134, overruling *People v. McGee* (2006) 38 Cal.4th 682, 685 (*McGee*).)

The California Supreme Court previously held in *McGee* that "the Sixth Amendment permits courts to review the record of a defendant's prior conviction to determine whether the crime qualifies as a serious felony for purposes of the sentencing laws." (*Gallardo*, *supra*, 4 Cal.5th at p. 124.)

Consistent with *Descamps*, the California Supreme Court in *Gallardo* explained, "a sentencing court is permitted to identify those facts that were already necessarily found by a prior jury in rendering a guilty verdict [in the prior conviction case] or admitted by the defendant in entering a guilty plea [in the prior conviction case]." (*Gallardo*, *supra*, 4 Cal.5th at p. 124.) The sentencing court's identification of those facts does not violate a defendant's Sixth Amendment right to a jury trial. (*Gallardo*,

7.

*supra*, at p. 124.)  Relying on *Descamps*, *supra*, 570 U.S. at page 269, the court in *Gallardo* stated, "[W]hen the criminal law imposes added punishment based on findings about the facts underlying a defendant's prior conviction, '[t]he Sixth Amendment contemplates that a jury—not a sentencing court—will find such facts, unanimously and beyond a reasonable doubt.'"  (*Gallardo*, *supra*, at p. 124.)  "[W]e now hold that a court considering whether to impose an increased sentence based on a prior qualifying conviction may not determine the 'nature or basis' of the prior conviction based on its independent conclusions about what facts or conduct 'realistically' supported the conviction.  (*McGee*, *supra*, 38 Cal.4th at p. 706.)  That inquiry invades the jury's province by permitting the court to make disputed findings about 'what a trial showed, or a plea proceeding revealed, about the defendant's underlying conduct.'  [Citation.]  The court's role is, rather, limited to identifying those facts that were established by virtue of the conviction itself—that is, facts the jury was necessarily required to find to render a guilty verdict, or that the defendant admitted as the factual basis for a guilty plea."  (*Id.* at p. 136; see *Descamps*, *supra*, at p. 269.)

Just as here, Gallardo's prior conviction was a guilty plea to "assault with a deadly weapon or with force likely to produce great bodily injury" within the meaning of former section 245(a)(1).  (*Gallardo*, *supra*, 4 Cal.5th at p. 123; see *id.* at p. 136.)  The issue was whether that conviction qualified as the serious felony of "assault with a deadly weapon" within the meaning of section 1192.7, subdivision (c)(31), thus satisfying the Three Strikes law and section 667, subdivision (a)(1).  (*Gallardo*, *supra*, at pp. 123, 125.)  A conviction for assault "with a deadly weapon" would have qualified, but a conviction for assault with force likely to produce great bodily injury would not.  (*Id.* at p. 125.)

The court observed, "Here, the trial court engaged in a form of factfinding that strayed beyond the bounds of the Sixth Amendment.…  [The] [d]efendant did not specify that she used a deadly weapon when entering her guilty plea.  The trial court's sole basis for concluding that [the] defendant used a deadly weapon was a transcript from a

preliminary hearing at which the victim testified that [the] defendant had used a knife during their altercation. Nothing in the record shows that [the] defendant adopted the preliminary hearing testimony as supplying the factual basis for her guilty plea." (*Gallardo*, *supra*, 4 Cal.5th at p. 136.) "Because the relevant facts were neither found by a jury nor admitted by [the] defendant when entering her guilty plea, they could not serve as the basis for [the] defendant's increased sentence here." (*Id.* at p. 137.) "[A] sentencing court may identify those facts it is 'sure the jury … found' in rendering its guilty verdict, or those facts as to which the defendant waived the right of jury trial in entering a guilty plea. [Citation.] But it may not 'rely on its own finding' about the defendant's underlying conduct 'to increase a defendant's maximum sentence.'" (*Id.* at p. 134, quoting *Descamps*, *supra*, 570 U.S. at p. 270.)

The California Supreme Court differentiated the preliminary hearing transcript from the pretrial documents that could be relied upon such as indictments and jury instructions because a "sentencing court reviewing that preliminary transcript has no way of knowing whether a jury would have credited the victim's testimony had the case gone to trial." (*Gallardo*, *supra*, 4 Cal.5th at p. 137.) "[I]n the absence of any pertinent admissions, the sentencing court can only guess at whether, by pleading guilty to a violation of Penal Code section 245, subdivision (a)(1), [the] defendant was also acknowledging the truth of the testimony indicating that she had committed the assault with a [deadly weapon]." (*Ibid.*) "The trial court's role is limited to determining the facts that were necessarily found in the course of entering the conviction. To do more is to engage in 'judicial factfinding that goes far beyond the recognition of a prior conviction.'" (*Id.* at p. 134.)

C.     **Forfeiture**

Respondent contends that Hudson forfeited his Sixth Amendment claim by failing to object in the trial court. Although Hudson's claim would have been rejected based on California law at the time of trial, respondent argues that Hudson should have known to

object because the United States Supreme Court had issued *Decamps* several years before his trial, even though California courts had yet to adopt its holdings.

The California Supreme Court discussed this issue when deciding *Gallardo*. It noted its prior precedent that excused failures to object """"where to require defense counsel to raise [that] objection 'would place an unreasonable burden on defendants to anticipate unforeseen changes in the law and encourage fruitless objections in other situations where defendants might hope that an established rule … would be changed on appeal.'"""" (*Gallardo*, *supra*, 4 Cal.5th at pp. 127–128; see *People v. Rangel* (2016) 62 Cal.4th 1192, 1215.)

The court noted that in Gallardo's case, as is the case here, "at the time [the] defendant was sentenced, California law allowed a trial court to look to a preliminary hearing transcript to determine whether a defendant's prior conviction was 'realistically' a serious felony." (*Gallardo*, *supra*, 4 Cal.5th at pp. 127–128.) Even though *Descamps* had been decided at that time, "*Descamps* did not squarely overrule existing California law; it discussed the relevant Sixth Amendment principles only en route to construing the federal statute at issue to avoid constitutional concerns." (*Gallardo*, *supra*, at p. 128.) The Supreme Court concluded that "[i]t is at least questionable whether [the] defendant should be made to bear the burden of anticipating potential changes in the law based on the reasoning of a United States Supreme Court opinion addressed to the proper interpretation of a federal statute not at issue here." (*Ibid.*)

We hold that Hudson did not forfeit his claim by failing to raise an objection, as it placed an unreasonable burden to anticipate unforeseen changes in the law. While it is true that *Descamps* was recently decided prior to Hudson's trial, the application of federal law relevant to his claim was based on prior Supreme Court authority, namely, *Apprendi v. New Jersey* (2000) 530 U.S. 466, 490, which held that other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt. Despite

this authority, which issued in 2000, the California Supreme Court issued *McGee* and allowed for review of judicial records not contemplated in *Apprendi* and *Descamps*. It took the California Supreme Court until 2017 to redress its holding in *McGee* in issuing *Gallardo* to attempt to comply with relevant federal authority. There was no guarantee that the issuance of *Descamps* was going to have any effect on California law. Based on the uncertainty regarding when California would adopt holdings congruent with federal authority regarding the Sixth Amendment right to a jury trial, Hudson is excused from failing to object on said grounds in the trial court.

### D. Analysis

This case is indistinguishable from *Gallardo*. Both involve the same prior conviction, former section 245(a)(1), which alternatively covered both assault with a deadly weapon and assault causing great bodily injury. The evidence presented regarding the plea only specified that Hudson pled no contest to section 245(a)(1), but did not specify on which ground.[4] Based on the evidence presented before us, we are unable to determine whether the admissible evidence of the prior conviction specified whether Hudson pled no contest to assault with a deadly weapon or assault causing great bodily injury.

The information, assuming the handwritten notes alleging assault with a deadly weapon were incorporated therein, states that a pipe was used as a deadly weapon.[5] However, even so assuming, the record is silent as to whether Hudson pled to assault based on the use of a deadly weapon, causing great bodily injury, or both. "While a sentencing court is permitted to identify those facts that were already necessarily found

---

[4] If there was a transcript of the plea colloquy, it was not presented to the trial court for review.

[5] This assumption is made for the sake of argument. On remand, the trial court must determine whether the handwritten additions to the information were proper amendments to the information, thereby properly expanding the basis for criminal liability to assault with a deadly weapon.

11.

by a prior jury in rendering a guilty verdict or admitted by the defendant in entering a guilty plea, the court may not rely on its own independent review of record evidence to determine what conduct 'realistically' led to the defendant's conviction." (*Gallardo*, *supra*, 4 Cal.5th at p. 124 .) The trial court violated defendant's Sixth Amendment right to a jury trial when it found a disputed fact about the conduct underlying Hudson's assault conviction that had not been established by virtue of the conviction itself. (*Gallardo*, *supra*, at pp. 124–125.) The court's reliance on the preliminary hearing transcript was impermissible, and violated Hudson's Sixth Amendment right to a jury trial.

### E. Harmless Error

In *Gallardo*, our Supreme Court, after finding a violation of the Sixth Amendment right to a jury trial, addressed the remedy of remand without discussing whether the error was harmless under *Chapman v. California* (1967) 386 U.S. 18. (*Gallardo*, *supra*, 4 Cal.5th at pp. 136–138.) Even if the Sixth Amendment error here was subject to the *Chapman* test for prejudice, remand would be required.

Respondent contends that any error made by the trial court by engaging in factual inquiry of records not allowed under the modified categorical approach of *Descamps* was harmless because the court could have properly relied on the factual description of the conviction as set forth in the abstract of judgment. The abstract described the conviction for section 245(a)(1) as "Assault w/ deadly weapon." Respondent relies on *Delgado* for the proposition that the abstract of judgment is an official, prepared clerical record of the conviction and sentence and, when properly prepared, is cloaked with a presumption of regularity and reliability. (*Delgado*, *supra*, 43 Cal.4th at p. 1070.)

The California Supreme Court in *Delgado* found, based solely on the language of the abstract, that there was sufficient evidence to show that the defendant pled to assault with a deadly weapon under section 245(a)(1), thereby finding the prior serious felony allegation true. (*Delgado*, *supra*, 43 Cal.4th at p. 1063.) In determining that the court

12.

could rely on the abstract of judgment, the court relied on the proposition that "otherwise admissible evidence from the entire record of the conviction may be examined to resolve the issue." (*Id.* at p. 1065.) That included certified records, including the abstract of judgment, and that the "'trier of fact is entitled to draw reasonable inferences from certified records offered to prove a defendant suffered a prior conviction .…'" (*Id.* at p. 1066.) Whether the trial court is drawing reasonable inferences from the certified records or is independently reviewing the evidence to determine what conduct realistically led to the defendant's conviction, such conduct may run afoul of the defendant's Sixth Amendment rights to a jury trial as described in *Descamps* and *Gallardo*.

Under *Descamps*, Hudson's prior offense can be used to enhance his sentence only if the elements of the prior offense render it a serious felony and strike offense. In this case, the abstract of judgment of the prior offense noted that Hudson was convicted under section 245(a)(1) based on assault with a deadly weapon. However, the abstract of judgment alone does not reveal whether the court's conclusion that the offense was for assault with a deadly weapon evidenced from the elements of the prior offense as stated in the charging documents, plea agreement or colloquy. Instead, the abstract may reflect the court's own interpretation and factfinding of the available evidence. As explained above, under *Descamps*, this is a critical distinction. While the abstract of judgment may be entitled to presumptions of reliability under state law, whether or not the evidence contained therein violates Hudson's Sixth Amendment right to a jury trial based on impermissible judicial factfinding is a separate and distinct inquiry. On the record before us, it cannot be determined whether the Sixth Amendment violation was harmless.

### F. Relief

In *Gallardo*, the court determined that the proper remedy was to remand the matter to the trial court "to permit the People to demonstrate to the trial court, based on the record of the prior plea proceedings, that [the] defendant's guilty plea encompassed a

13.

relevant admission about the nature of her crime." (*Gallardo*, *supra*, 4 Cal.5th at p. 139.) "Such a procedure fully reconciles existing precedent with the requirements of the Sixth Amendment." (*Id.* at p. 138.) As described above, the court here impermissibly relied on the preliminary hearing transcript to find that the prior conviction was assault with a deadly weapon. The court did not examine whether, based on the limited range of approved record-based documents permissible under *Descamps* and *Gallardo*, it can be determined the conviction was for assault with a deadly weapon. Nor can we be certain that the record on appeal contains all of the permissible record-based documents in existence to determine the nature of the prior conviction.

We remand the matter to allow the prosecution to present evidence allowed under the "modified categorical" approach and only consult the limited range of approved record-based documents (i.e., charging documents and plea colloquy) to identify the elements that formed the basis of Hudson's prior conviction. (See *Descamps*, *supra*, 570 U.S. at pp. 261–265.) With regard to the relevant documents, we have noted discrepancies in charging documents that the court must reconcile on remand, namely, the handwritten notes attempting to amend the language of the information. Furthermore, to the extent that the prosecution relies on the language of the abstract of judgment stating that the plea was based on assault with a deadly weapon, it must address whether the statements in the abstract were based on approved record-based documents or, instead, reflect impermissible judicial factfinding under *Descamps* and *Gallardo*.

## III.    Correction of the Abstract of Judgment

"'Courts may correct clerical errors at any time, and appellate courts … that have properly assumed jurisdiction of cases have ordered correction of abstracts of judgment that did not accurately reflect the oral judgments of sentencing courts.' (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.) Accordingly, we shall direct the trial court to correct the cited clerical errors." (*People v. High* (2004) 119 Cal.App.4th 1192, 1200.) As the matter is remanded, the court shall be directed to issue a new abstract of judgment

14.

in light of its findings, which may make any need to correct the errors of the present abstract unnecessary. Regardless, we note the clerical errors to ensure that such errors shall not be mistakenly adopted in the new abstract of judgment.

Appellant contends that the abstract of judgment mistakenly lists the date of conviction as June 15, 2016, instead of April 14, 2016, that he should be awarded a total of 243, rather than 233 days of presentence custody credit, and that his sentence for mayhem should be corrected to reflect a sentence of 16 years, and the eight-year separate enhancement should be deleted. Respondent acknowledges the errors and concedes that the abstract of judgment should be corrected to properly reflect the credit for time served. The request to correct the error is hereby granted. Upon remand, the trial court shall prepare an abstract of judgment to reflect proper sentence credits as set forth above and as modified by further findings of the trial court.

## DISPOSITION

The judgment is reversed. We remand the case to permit the People to demonstrate to the trial court, based on the review of the record of the prior plea proceedings in a manner permissible under *Descamps v. United States* (2013) 570 U.S. 254 and *People v. Gallardo* (2017) 4 Cal.5th 120, whether Hudson's guilty plea encompassed a relevant admission about the nature of the crime.

_____

MEEHAN, J.

WE CONCUR:

_____

SMITH, Acting P.J.

_____

SNAUFFER, J.

15.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>MARQUETTE LASHON HUDSON,<br><br>    Defendant and Appellant. | F074016<br><br>(Stanislaus Super. Ct. No. 1484556)<br><br>**ORDER MODIFYING OPINION AND FOR PUBLICATION [NO CHANGE IN JUDGMENT]** |

It is ordered that the opinion filed herein on October 5, 2018, be modified in the following particulars:

The heading part III. of the Discussion (on page 14) is renumbered as part II.

As the nonpublished opinion filed on October 5, 2018, in the above entitled matter hereby meets the standards for publication specified in the California Rules of Court, rule 8.1105(c), it is ordered that the opinion be certified for publication in the Official Reports.

There is no change in the judgment.

                                                                                        MEEHAN, J.

WE CONCUR:


SMITH, Acting P.J.


SNAUFFER, J.

16.