Filed 2/2/23  Ruiz v. Superior Court CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ANTHONY RUIZ,<br><br>        Petitioner,<br><br>        v.<br><br>THE SUPERIOR COURT OF LOS ANGELES COUNTY,<br><br>        Respondent;<br><br>THE PEOPLE,<br><br>        Real Party in Interest. | B321114<br><br>(Los Angeles County Super. Ct. No. BA483528) |

        ORIGINAL PROCEEDINGS in mandate.  Mary Lou Villar, Judge.  Petition denied.

        Ricardo D. Garcia, Public Defender, Albert J. Menaster, Jacob Stromin, Julianne Prescop and Nick Stewart-Oaten, Deputy Public Defenders for Petitioner.

        No appearance for Respondent.

        Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant

Attorney General, Noah P. Hill, David Glassman and Steven E. Mercer, Deputy Attorneys General for Real Party in Interest.

_____

In October 2020, Anthony Ruiz (Ruiz) pleaded no contest to two counts of elder abuse.  (Pen. Code, § 368, subd. (b)(1).)[1] The court sentenced him to three years in prison, suspended the sentence, and placed him on probation for five years.

In May 2022, after the Legislature amended section 1203.1 to limit, generally, felony probation terms to two years, Ruiz filed a motion to amend the probation order to shorten the probation period to two years.  The trial court denied the motion, and Ruiz sought review before us by petition for writ of mandate.  We issued an order to show cause and have received briefing and heard argument.  For the reasons given below, we deny the petition.

## FACTUAL AND PROCEDURAL SUMMARY

### A.      Ruiz's Plea Agreement and Sentence

In December 2019, the District Attorney charged Ruiz with one count of assault with a deadly weapon (count 1; § 245, subd. (a)(1)), two counts of elder abuse against Carmen R. (counts 2 and 4; § 368, subd. (b)(1)), and two counts of making a criminal threat (counts 3 and 5; § 422, subd. (a)).[2]

_____

[1] Subsequent unspecified statutory references are to the Penal Code.

[2] Our record does not include the charging document.  Our description of the charges is derived from the transcript of the

On October 8, 2020, pursuant to a plea agreement, Ruiz pleaded no contest to two counts of elder abuse.  The court found a factual basis for the plea based on counsels' stipulation and its "review of the probation officer's report."  The probation report states that the victim, Carmen R., "is the defendant's grandmother."

The court accepted the plea and found Ruiz guilty of two counts of elder or dependent abuse (counts 2 and 4).  In accordance with the plea agreement, the court dismissed the remaining counts.  The court sentenced Ruiz to three years in prison on count 2, and 18 months on count 4, to run concurrent to the sentence on count 2.[3]  The court then suspended execution of the sentence and placed him on probation for five years.  The prosecutor advised Ruiz that if he violated the terms and conditions of probation, he "could be sent to prison for an amount

_____

plea hearing and minute orders included in our record.  It does not appear that the court held a preliminary hearing in the case.

[3] The sentence on count 4 appears to be erroneous and unauthorized.  The sentencing triad for violating section 368, subdivision (b)(1) is two, three, or four years.  The court stated that it sentenced Ruiz on count 4 to 18 months in prison, which it described as "one-third the midterm," to be served "concurrent with the principal term."  There are two problems with this sentence.  First, one-third of the three-year midterm, is one year, not 18 months.  Second, when, as here, the court states that one term shall run concurrent to another term, it must impose a full-term sentence on both terms; a sentence equal to one-third of the midterm is imposed only when a subordinate term is to run consecutive to the principal term.  (*People v. Quintero* (2006) 135 Cal.App.4th 1152, 1156, fn. 3.)  We will direct that the sentence be modified accordingly.  (See *ibid.*)

3

of time up to and including [the] maximum sentence" of five years.[4]

The terms and conditions of Ruiz's probation include, among others, that Ruiz serve 157 days in jail (and he was credited the same number of days), and that he participates in a one-year "residential treatment program," including an anger management program. The court also issued a protective order pursuant to section 136.2, subdivision (i)(1), prohibiting Ruiz from coming within 100 yards of, or having any in-person contact with, Carmen R. and Antonio R.[5] The protective order also requires that he "not harass, strike, threaten, assault . . . , follow, stalk, molest, . . . disturb the peace, keep under surveillance, or block movements of" Carmen R. or Antonio R.

The court ordered Ruiz to pay a restitution fine (§ 1202.4, subd. (b)), a probation revocation restitution fine (§ 1202.44), and certain assessments (§ 1465.8, subd. (a)(1); Gov. Code, § 70373).

---

[4] The stated maximum term of five years is presumably calculated by adding the upper term of four years on a primary count and a consecutive one year (one-third of the midterm of three years) on the subordinate count. (§§ 368, subd. (b)(1), 1170.1, subd. (a).)

[5] The version of section 136.2, subdivision (i)(1) in effect when the court issued its protective order authorized a protective order "[w]hen a criminal defendant has been convicted of a crime involving domestic violence as defined in Section 13700 or in Section 6211 of the Family Code, a violation of subdivision (a) of Section 236.1, Section 261, 261.5, 262, subdivision (a) of Section 266h, or subdivision (a) of Section 266i, a violation of Section 186.22, or a crime that requires the defendant to register pursuant to subdivision (c) of Section 290." (Former § 136.2, subd. (i)(1); Stats. 2019, ch. 256, § 6, p. 2736.)

4

The court held these fines and assessments "in abeyance, to be waived at completion" of probation.

### B.     Assembly Bill No. 1950, Ruiz's Motion To Reduce His Probation Term, and the Instant Writ Petition

In 2020, the Legislature enacted Assembly Bill No. 1950 (2019–2020 Reg. Sess.) (Assembly Bill No. 1950), which amended section 1203.1 to shorten the maximum probation term for most felonies to two years.  (§ 1203.1, subd. (a); Stats. 2020, ch. 328, § 2.)[6]  The Legislature, however, specified certain exceptions from the two-year maximum, including "an offense that includes specific probation lengths within its provisions." (Former § 1203.1, subd. (m)(1); Stats. 2020, ch. 328, § 2.)[7]  The amendment became effective on January 1, 2021.

In May 2022—approximately one year and seven months after his five-year probationary period began—Ruiz filed what he described as a motion "to update [the court's] records to reflect the correct date for the expiration of his probation pursuant to [Assembly Bill No.] 1950."  Ruiz asserted that the ameliorative changes made by Assembly Bill No. 1950 apply retroactively to

---

[6] Prior to the amendment, the term of probation was limited to "a period of time not exceeding the maximum possible term of the sentence."  (Former § 1203.1, subd. (a).)

[7] The Legislature subsequently amended section 1203.1 with the effect of placing the exceptions to the two-year maximum probation terms, previously within subdivision (m), in subdivision (*l*) of section 1203.1.  (Stats. 2021, ch. 257, § 22.) For the sake of clarity, we will refer to the current version of the statute.  (See *People v. Qualkinbush* (2022) 79 Cal.App.5th 879, 893, fn. 12 (*Qualkinbush*).)

him and that he was not convicted of an offense that " 'includes specific probation lengths within its provisions.' "  He argued that he is therefore entitled to a reduction of his probationary term to two years.

Ruiz acknowledged in his motion that "section 1203.097 does contain a longer probation term."  Under section 1203.097, "[i]f a person is granted probation for a crime in which the victim is a person defined in Section 6211 of the Family Code, the terms of probation shall include" certain terms, including a "minimum period of probation of 36 months."  (§ 1203.097, subd. (a)(1).)  Family Code section 6211 defines domestic violence as "abuse perpetrated against" certain classes of persons, including any "person related by consanguinity or affinity within the second degree."  (Fam. Code, § 6211, subd. (f).)

Ruiz argued that section 1203.097 did not apply to him because he "was not charged with a violation of . . . section 1203.097, was not convicted [of] (and did not admit) a violation of section 1203.097, and was not sentenced pursuant to the terms of section 1203.097."  Ruiz further argued that a "finding that [he] violated section 1203.097 can only be made by a jury, unless admitted by [Ruiz]."

The District Attorney opposed the motion.  In his written opposition, the prosecutor argued that section 1203.097 applies in this case because the victim of Ruiz's crimes is Ruiz's "75-year-old grandmother"—a person related by consanguinity within the second degree—and thus a person defined in section 6211 of the Family Code.  (See Prob. Code, § 13, subd. (b) ["grandchild and grandparent are related in the second degree"].)  The court, rather than a jury, can make that finding, the prosecutor explained, because probation "is not an act of punishment"

6

that must be supported by jury findings, "but instead an act of clemency on the part of the court."  The prosecutor did not refer to or submit any evidence in support of the opposition.

On May 27, 2022, at the hearing on the motion, the prosecutor argued that maintaining the five-year probation term is "appropriate" because Ruiz's convictions arose from an incident in which Ruiz "point[ed] a firearm at his grandmother," and a grandmother is among the persons described in Family Code section 6211.

The prosecutor further informed the court that Ruiz "is asking [the] court" to permit him "to have contact with his grandparents again," and that "the grandmother" "is asking the court to modify the protective order so she can have contact with her grandson."  Ruiz had recently fathered a child and, according to the prosecutor, the grandmother stated that she and her husband "would like to see their grandson as well as their great-grandson."

Ruiz's counsel neither conceded nor denied that Carmen R.—the victim of Ruiz's elder abuse crimes—is Ruiz's grandmother.  Counsel argued that section 1203.097 did not apply because Ruiz "was not charged with . . . a [domestic violence] offense," he "did not admit the relationship, and he was not given any probationary terms under [section] 1203.097."

The court acknowledged that Ruiz's "plea was not under [section 1203.097]," but stated that it "recognize[d] the relationship [Ruiz has] with the grandmother," and denied the Ruiz's motion "given the familial relationship."  The court then issued a modified protective order that allowed Ruiz to have "peaceful contact with [Carmen R. and Antonio R.] with a third party present."

7

Ruiz's counsel objected on hearsay grounds to the court's finding of a "familial basis" in denying the motion.

On June 23, 2022, Ruiz filed in this court a petition for writ of mandate directing the superior court "to set a new probation expiration date of October 7, 2022." He argues: (1) Under Assembly Bill No. 1950, his maximum period of probation is two years because he was not convicted of an offense that includes specific probation lengths within its provisions; (2) the court's finding that section 1203.097 applies based on the Ruiz's familial relationship with the victim could only be made by a jury; and (3) the court's finding that the victim of Ruiz's crimes is a person defined in section 6211 of the Family Code was based on inadmissible hearsay.[8]

On October 20, 2022, we issued an order to show cause why a peremptory writ of mandate should not issue.

We have received and considered the Attorney General's return in opposition to the writ, Ruiz's reply, and supplemental briefing.

## DISCUSSION

### A. Sections 1203.1 and 1203.097

Subdivision (a) of section 1203.1, as amended by Assembly Bill No. 1950, provides in part: "The court, or judge thereof, in the order granting probation, may suspend the imposing or the

---

[8] Ruiz did not include among the exhibits supporting his petition the probation report relied on by the court at the sentencing hearing. We subsequently augmented the record with the probation report and requested and received supplemental briefing addressing the impact of the report on the issues in this case.

8

execution of the sentence and may direct that the suspension may continue for a period of time not exceeding two years, and upon those terms and conditions as it shall determine." Subdivision (*l*) of that section, however, provides, as is relevant here: "The two-year probation limit in subdivision (a) shall not apply to: [¶] . . . an offense that includes specific probation lengths within its provisions." (§ 1203.1, subd. (*l*)(1).) For such an offense, the court may grant probation and "suspend the imposing or the execution of the sentence and may direct that the suspension may continue for a period of time not exceeding the maximum possible term of the sentence and under conditions as it shall determine." (*Ibid.*) As the prosecutor informed Ruiz at his plea hearing, the maximum possible prison term for convictions of two counts of elder abuse under section 368, subdivision (b)(1) is five years. (See fn. 4, *ante.*)

Ruiz contends that the exception to the general, two-year limitation on probation terms for offenses that include "specific probation lengths within its provisions" (§ 1203.1, subd. (*l*)(1)) does not apply to him because he was convicted of violating subdivision (b)(1) of section 368, and that section does not include any specific probation length within its provisions. Therefore, he concludes, the general rule under Assembly Bill No. 1950 limiting probation to two years applies, and the superior court erred by failing to reduce his probationary term accordingly.[9]

---

[9] Whether Assembly Bill No. 1950 applies retroactively to persons who were placed on probation prior to its effective date is currently under review by our Supreme Court. (*People v. Prudholme*, S271057, Supreme Ct. Mins., Dec. 22, 2021, p. 1784 [order directing parties in *Prudholme* to brief whether Assembly Bill No. 1950 applies retroactively and, if so, whether the remand

The Attorney General argues that the pertinent "specific probation length" is set forth in section 1203.097, which requires a minimum 36-month probation term in any case in which "a person is granted probation for a crime in which the victim is a person defined in Section 6211 of the Family Code." (§ 1203.097, subd. (a).) Persons defined in section 6211 of the Family Code include a "person related by consanguinity or affinity within the second degree" (Fam. Code, § 6211, subd. (f)), which includes the relationship of grandchild and grandparent. (Prob. Code, § 13, subd. (b).) Thus, even when the statute defining Ruiz's crime (here, section 368) does not provide for a specific probation length, if the victim of the crime is Ruiz's grandparent, the specific minimum probation length of 36 months provided in section 1203.097 applies.

Courts that have considered this issue have agreed with the Attorney General's interpretation of Assembly Bill No. 1950. (See *Qualkinbush, supra,* 79 Cal.App.5th at p. 895; *People v. Rodriguez* (2022) 79 Cal.App.5th 637, 644; *People v. Forester* (2022) 78 Cal.App.5th 447, 454.) As the court in *Rodriguez* explained, the fact that a statute defining a crime "does not include a specific probation length is not material, as the Penal Code often separates the punishment provisions from the crime. [Citation.] That is purely an issue of form. Penal statutes that set forth the elements of an offense and the sentencing provisions that are triggered upon conviction 'operate in tandem to define the crime and its consequences.' [Citation.] Accordingly, a penal statute that works in tandem

procedure of *People v. Stamps* (2020) 9 Cal.5th 685 applies].) The parties have not raised this issue in the instant proceeding and, therefore, we do not consider it.

10

with a separate sentencing statute—separate in form, but not in function—is exempt from Assembly Bill [No.] 1950's probation limits." (*Rodriguez*, *supra*, at p. 644.)  Moreover, Ruiz's interpretation "would mean that the Legislature intended to draw a distinction between offenses that separate the punishment provisions from the crime and offenses that do not." (*Ibid.*)  We, like the *Rodriguez* court, "are unpersuaded that the Legislature intended to create a new scheme in which persons convicted of offenses that happen to have a separate sentencing provision would benefit from a reduced probation term under Assembly Bill [No.] 1950, while those convicted under a scheme in which a minimum probation is self-contained within the same statute do not." (*Rodriguez*, *supra*, at pp. 644–645; see generally Couzens et al., Sentencing California Crimes (The Rutter Group 2022) § 8:18 ["[b]ecause of section 1203.097, a conviction of a crime where the victim is listed in Family Code section 6211 is an offense 'that includes [a] specific probation length[ ] within its provisions' for the purposes of the exception under section 1203.1, subdivision ([*l*])(1)"].)  We agree with these authorities and reject Ruiz's argument to the contrary.

### B.    Applicability of *Apprendi*

Ruiz further contends that, even if section 1203.097, subdivision (a) provides an exception to the two-year limit under section 1203.1, subdivision (a), when the victim is a person described in Family Code section 6211, the victim's status as such must be found by a jury beyond a reasonable doubt.  Ruiz relies primarily on *Alleyne v. United States* (2013) 570 U.S. 99 (*Alleyne*).  *Alleyne* is among a line of United State Supreme Court and California Supreme Court cases, beginning with *Apprendi v. New Jersey* (2000) 530 U.S. 466, 490 (*Apprendi*), establishing

11

the rule that any fact, other than the fact of a prior conviction, that increases the minimum or maximum penalty for a crime must be either admitted by the defendant, established by the defendant's guilty plea, or submitted to a jury and proved beyond a reasonable doubt.  (See, e.g., *Alleyne*, *supra*, 570 U.S. at pp. 103, 108; *Cunningham v. California* (2007) 549 U.S. 270, 281 (*Cunningham*); *United States v. Booker* (2005) 543 U.S. 220, 244; *Blakely v. Washington* (2004) 542 U.S. 296, 303; *Ring v. Arizona* (2002) 536 U.S. 584, 609 (*Ring*); *Apprendi*, *supra*, 530 U.S. at p. 490; *People v. Gallardo* (2017) 4 Cal.5th 120, 124 (*Gallardo*).)

Here, the fact upon which the court based its decision is the victim's relation to Ruiz as Ruiz's grandparent—a fact disclosed in a presentence probation report.  As Ruiz points out, he did not admit this fact and it was neither established by his plea nor found by a jury.  He contends that, under *Apprendi* and *Alleyne*, the court could not make a factual finding that allows the court to impose a probationary term longer than a term the court could impose in the absence of that fact.  We reject the contention.  Although the longer probation term constitutes a longer restriction on Ruiz's liberty, it does not constitute a criminal penalty or punishment for purposes of the *Apprendi* rule.

The *Apprendi* rule has been applied to judicial factfinding that results in increased maximum or minimum prison sentences (*Apprendi*, *supra*, 530 U.S. at pp. 468–469; *Alleyne*, *supra*, 570 U.S. at pp. 103, 108), criminal fines (*Southern Union Co. v. United States* (2012) 567 U.S. 343, 346 (*Southern Union*)), the imposition of a "*new* mandatory minimum prison term" upon the revocation of conditional release (*United States v. Haymond* (2019) 588 U.S. ___ [139 S.Ct. 2369, 2380, 204 L.Ed.2d 897, 907] (*Haymond*) (plur. opn. of Gorsuch, J.)), and death sentences

12

(*Ring, supra,* 536 U.S. at pp. 588–589).  It does not appear
that the question presented here—whether the rule applies to
a factual finding that increases a term of probation—has been
addressed in any published opinion.

The *Apprendi* rule is founded on the Sixth Amendment
right to trial by jury.  (*Alleyne, supra,* 570 U.S. at p. 111;
*Apprendi, supra,* 530 U.S. at p. 477.)  The Supreme Court has
stated that, in applying *Apprendi* to particular circumstances,
it is appropriate to "examine the historical record, because 'the
scope of the constitutional jury right must be informed by the
historical role of the jury at common law.' " (*Southern Union,
supra,* 567 U.S. at p. 353; see *Cunningham, supra,* 549 U.S. at
p. 281 [the *Apprendi* "rule is rooted in longstanding common-law
practice"]; *Oregon v. Ice* (2009) 555 U.S. 160, 168 [to guard
against "legislative encroachment on the jury's traditional
domain," the court "consider[s] whether the finding of a
particular fact was understood as within 'the domain of the
jury . . . by those who framed the Bill of Rights' "].)

Our review of common law practices concerning probation
does not support Ruiz's position.  In contrast to the "centuries"
of "common law" practices supporting the requirement that
juries make the findings upon which courts fix the term of
a criminal penalty (*Apprendi, supra,* 530 U.S. at p. 477), the
history of probation reveals a history of discretionary judicial
decision-making without jury involvement.  Although, at the
time the Constitution was adopted, "there was no such thing as
probation" per se (Friedman, *Crime and Punishment in American
History* (1993) 38), courts employed various theories to allow
those convicted of crimes to avoid incarceration conditioned upon
their "good behavior."  (Grinnell, The Common Law History of

13

Probation—An Illustration of the Equitable Growth of Criminal Law (1941−1942) 32 J. Crim. L. & Criminology 15, 17−23 (Grinnell); Webster, *The Evolution of Probation in American Law* (1952) 1 Buff. L.Rev. 249, 251 (Webster); 2 U.S. Dept. of Justice, The Attorney General's Survey of Release Procedures (1939) pp. 3−7 (2 U.S. Dept. of Justice Survey).) Before and after the nation's founding, courts, with or without statutory authorization, exercised discretion independent of the jury's verdict to suspend a sentence on the court's terms and conditions. (See, e.g., *Ex parte United States* (1916) 242 U.S. 27, 44 [under "the common law . . . courts possessed and asserted the right to exert judicial discretion . . . to temporarily suspend either the imposition of sentence or its execution when imposed to the end that pardon might be procured"]; *People ex rel. Forsyth v. Court of Sessions* (N.Y. 1894) 36 N.E. 386, 388 [the power to suspend sentence after conviction is inherent in "courts at common law" and "an ordinary judicial function"]; *Commonwealth v. Dowdican's Bail* (1874) 115 Mass. 133, 136 [recognizing the judicial practice of suspending a criminal sentence "upon such terms as the court in its discretion may impose"]; *Estes v. State* (1842) 21 Tenn. 496, 498 [the practice of " 'binding to the good behavior' [a predecessor to probation] was a discretionary judgment, at the common law, given by a court of record"]; see generally, Webster, *supra,* 1 Buff. L.Rev. at p. 251 ["[i]n early days of American jurisprudence, . . . many courts held that they had the inherent power to suspend the sentence of a criminal before them"]; 2 U.S. Dept. of Justice Survey, *supra*, p. 2 ["probation is almost universally a matter of judicial discretion"]; 3 Wright & Miller, Federal Practice and Procedure (5th ed. 2022) § 547 [historically, the "sentencing court had broad latitude to

14

prescribe reasonable conditions for probation"].) Ruiz has not referred us to any authority suggesting that juries had a role in the setting of probation terms.

*Haymond, supra*, 588 U.S. \_\_\_ [139 S.Ct. 2369] is instructive. In that case, the United States Supreme Court addressed the constitutionality of a federal statute that requires a trial court, upon finding that a defendant violated a condition of supervised release, to impose a "*new* mandatory minimum prison term" that exceeds the minimum prison term authorized by the jury's verdict. (*Id.* at p. \_\_\_ [139 S.Ct. at p. 2380] (plur. opn. of Gorsuch, J.).)[10] A four-justice plurality, together with Justice Breyer's separate concurrence, held that the statute was unconstitutional under *Alleyne*.

Justice Gorsuch, writing for the plurality, distinguished the statute at issue from laws governing parole and probation. (*Haymond, supra*, 588 U.S. at p. \_\_\_ [139 S.Ct. at pp. 2381–2382] (plur. opn. of Gorsuch, J.).) Parole and probation, Justice Gorsuch explained, provide defendants with "a period of conditional liberty as an 'act of grace,' " which does "not usually implicate the historic concerns of the Fifth and Sixth Amendments." (*Haymond, supra*, 588 U.S. at p. \_\_\_ [139 S.Ct.

---

[10] According to the *Haymond* plurality, the statute at issue in *Haymond*—18 U.S.C. section 3583(k)—operates as follows: "[I]f a judge finds by a preponderance of the evidence that a defendant on supervised release committed one of several enumerated offenses, including the possession of child pornography, the judge *must* impose an additional prison term of at least five years and up to life without regard to the length of the prison term authorized for the defendant's initial crime of conviction." (*Haymond, supra*, 588 U.S. at p. \_\_ [139 S.Ct. at p. 2374] (plur. opn. of Gorsuch, J.).)

15

at p. 2377] (plur. opn. of Gorsuch, J.).)  Thus, although courts are permitted to make factual findings that result in the revocation of probation and the execution of defendant's previously suspended prison sentence, that "result [is] entirely harmonious with the Fifth and Sixth Amendments," so long as the court does "not imprison [the] defendant for any longer than the jury's factual findings [or defendant's plea] allowed."  (*Haymond, supra,* 588 U.S. at p. ____ [139 S.Ct. at p. 2382] (plur. opn. of Gorsuch, J.).)

Justice Breyer concurred in the judgment, providing the critical fifth vote, but wrote separately to confine the court's holding to the "specific provision of the supervised-release statute" at issue in the case, which, he opined, "is less like ordinary revocation and more like punishment for a new offense, to which the jury right would typically attach."  (*Haymond, supra,* 588 U.S. at p. __ [139 S.Ct. at p. 2386] (conc. opn. of Breyer, J.); see *United States v. Seighman* (3d Cir. 2020) 966 F.3d 237, 242 ["Justice Breyer['s] . . . opinion is the Court's holding because it supplies the narrowest ground supporting the judgment"].)  Justice Breyer explained that he "would not transplant the *Apprendi* line of cases to the supervised-release context."  (*Haymond, supra,* 588 U.S. at p. __ [139 S.Ct. at p. 2385] (conc. opn. of Breyer, J.).)  Federal courts have followed this view and declined to extend *Haymond* or *Alleyne* to other provisions of the federal supervised release law that permit judicial factfinding.  (See, e.g., *United States v. Garner* (5th Cir. 2020) 969 F.3d 550, 552−553; *United States v. Doka* (2d Cir. 2020) 955 F.3d 290, 296−297.)

Although *Haymond*, which involved a supervised release revocation and resentencing proceeding, is not directly on point,

16

the court's rationale cuts against Ruiz's position here. If, as all members of the *Haymond* Court agree, a court may ordinarily make factual determinations that result in the revocation of probation and the incarceration of the defendant without implicating *Apprendi* or *Alleyne*, the court should be able to make the less consequential finding in this case, which did not result in incarceration and, instead, continues to allow Ruiz the conditional liberty he enjoys as a probationer. Although the court's finding that Ruiz committed his crimes against his grandmother allowed the court to impose a probationary term longer than the probationary term that it could impose in the absence of that finding, even the longer probationary term did not increase the term of Ruiz's suspended prison sentence or, therefore, implicate the "historic concerns of the Fifth and Sixth Amendments." (*Haymond, supra*, 588 U.S. at p. ___ [139 S.Ct. at p. 2377] (plur. opn. of Gorsuch, J.); see *Frank v. United States* (1969) 395 U.S. 147, 148, 150−151 [no Sixth Amendment right to jury trial for a " 'petty' " offense resulting in five-year probation sentence].)

The *Haymond* plurality's characterization of probation as "an 'act of grace' " (*Haymond, supra*, 588 U.S. at p. __ [139 S.Ct. at p. 2377] (plur. opn. of Gorsuch, J.)) is consistent with our state Supreme Court's view that a "grant of probation is 'qualitatively different from such traditional forms of punishment as fines or imprisonment. Probation is neither "punishment" [citation] nor a criminal "judgment" [citation]. Instead, courts deem probation an act of clemency in lieu of punishment [citation], and its primary purpose is rehabilitative in nature [citation].' [Citation.] Accordingly, [our state Supreme Court has] explained that a grant of probation is an act of grace or clemency, and an offender

17

has no right or privilege to be granted such release. [Citation.] Stated differently, '[p]robation is not a right, but a privilege.' [Citation.]" (*People v. Moran* (2016) 1 Cal.5th 398, 402; see *People v. Rodriguez* (1990) 51 Cal.3d 437, 445 ["placing a criminal on probation [is] an act of clemency and grace"].)

Thus, courts may deny a defendant probation based on facts found by the court without violating the *Apprendi* rule. (See *In re Varnell* (2003) 30 Cal.4th 1132, 1142 (*Varnell*) [court's factfinding that resulted in the denial of probation did not implicate *Apprendi* because the denial did not increase the penalty for defendant's crime]; *People v. Benitez* (2005) 127 Cal.App.4th 1274, 1278 [because eligibility for probation "results in a *reduction* rather than an increase in the sentence prescribed for his offenses," judicial factfinding on the issue is not subject to the *Apprendi* rule]; Cal. Rules of Court, rule 4.414(c) ["[i]n determining the suitability of the defendant for probation, the court may consider factors in aggravation and mitigation, whether or not the factors have been stipulated to by the defendant or found true beyond a reasonable doubt at trial by a jury or the judge in a court trial"].) Because a court is permitted to deny probation entirely based on judicial factfinding, we see no reason why the court may decline to impose a shorter probationary term based on judicial factfinding that justifies a longer term. (Cf. *People v. Blakely* (2014) 225 Cal.App.4th 1042, 1060 [*Apprendi* and its progeny do not apply to a determination of eligibility for resentencing under the Three Strikes Reform Act of 2012]; *People v. Solis* (2001) 90 Cal.App.4th 1002, 1022 [*Apprendi* does not apply to judicial factfinding under section 654 because that section is a sentencing reduction statute]; see also *Dillon v. United States* (2010) 560 U.S. 817, 828 [sentence

18

modification procedure, which was a "congressional act of lenity," allowed judicial factfinding without implicating *Apprendi*]; *United States v. Lizarraga-Carrizales* (9th Cir. 2014) 757 F.3d 995, 999 [*Alleyne* does not preclude judicial factfinding that results in the denial of a reduced sentence because the facts so found did not increase the statutory minimum].)

We recognize that probation has been described as "punishment" in other contexts. In *People v. Delgado* (2006) 140 Cal.App.4th 1157, for example, the enactment of section 1203.097 after the defendant committed his crime "increased the measure of defendant's punishment" for purposes of ex post facto analysis. (*Delgado, supra,* at p. 1170; see also *People v. Quinn* (2021) 59 Cal.App.5th 874, 882–883 [statutory reduction of probation term entitled to retroactive application under *In re Estrada* (1965) 63 Cal.2d 740, because it made " ' "reduced punishment possible" ' "].) We have not been referred to any case, however, that describes probation as punishment or a penalty for purposes of *Apprendi* analysis. (See *Varnell, supra*, 30 Cal.4th at p. 1141 [judicial factfinding that rendered defendant "unfit for probation under a particular provision" was "not the equivalent of an increase in penalty" that required it be pleaded and proved by a jury]; *State v. Dunlap* (N.J.Super.Ct.App.Div. 2020) 225 A.3d 1068, 1079–1080 [*Apprendi* and its progeny "focus exclusively on prison sentences and simply do not apply to non-custodial probationary sentences"].)

For all the foregoing reasons, we conclude that the rule of *Apprendi* and *Alleyne* does not preclude a court from setting a probationary term based on a fact, found by the court, that was not found by a jury, admitted by the defendant, or established by the defendant's guilty plea.

19

Ruiz relies principally on *Alleyne*, which held that the court's finding of a fact that increased the minimum prison sentence that could be imposed on the defendant beyond the minimum term authorized by the jury's findings violated *Apprendi*. (*Alleyne, supra*, 570 U.S. at p. 103.) *Alleyne* did not involve the terms of probation or analogous procedure. Ruiz also cites to *Gallardo, supra*, 4 Cal.5th 120 and *People v. Hudson* (2018) 28 Cal.App.5th 196. These cases held that, under *Apprendi*, a court, in determining whether a prior conviction was a "serious felony" for purposes of a sentence enhancement, could not rely on its own review of the record to determine facts that underpinned the prior conviction. (*Gallardo, supra*, 4 Cal.5th at pp. 123–125; *Hudson, supra*, 28 Cal.App.5th at pp. 205–207.) *Gallardo* and *Hudson* are inapposite because neither involves nor addresses whether judicial factfinding is permissible in determining the length of probation.

Ruiz also relies on *Southern Union, supra,* 567 U.S. 343, which extended *Apprendi* to criminal fines. In *Southern Union*, a jury convicted defendant corporation, Southern Union Co., of violating the Resource Conservation and Recovery Act of 1976 (RCRA) by "unlawfully storing liquid mercury 'on or about September 19, 2002 to October 19, 2004.' " (*Southern Union, supra,* 567 U.S. at p. 347.) Under the RCRA, the defendant could be subject to criminal penalties, including a "fine of not more than $50,000 each day of violation, or imprisonment not to exceed two years . . . , or both." (42 U.S.C. § 6928(d)(7).) If the defendant's violations occurred on each day between September 19, 2002 and October 19, 2004—a total of 762 days—the maximum fine would be $38.1 million. (*Southern Union, supra*, at p. 347.) The trial court "imposed a fine of $6 million

20

and a 'community service obligatio[n]' of $12 million." (*Ibid.*)
The question before the Supreme Court was whether *Apprendi*
applies to criminal fines. (*Id.* at pp. 347−348.) The court held
"that it does" (*id.* at p. 346) when the "fine is substantial enough
to trigger [the right to a jury trial under the Sixth Amendment]"
(*id.* at p. 352).

The *Southern Union* Court relied on its review of the
English practice with respect to fines and cited "authority
suggesting that English juries were required to find facts that
determined the authorized pecuniary punishment." (*Southern
Union*, *supra,* 567 U.S. at p. 354.) The court's "review of state
and federal decisions" also disclosed that the "predominant
practice was for such facts to be alleged in the indictment
and proved to the jury." (*Ibid.*) By contrast, our review of the
historical treatment of probation, discussed above, reveals no
similar practice with respect to the facts upon which the length
of probation is established.[11]

In a supplemental brief, Ruiz contends that, in addition
to requiring a minimum three-year term of probation,
section 1203.097 requires the imposition of other conditions not
authorized by his plea. These include "[b]ooking the defendant
within one week of sentencing if the defendant has not already
been booked" (§ 1203.097, subd. (a)(4)), a $500 fee (§ 1203.097,
subd. (a)(5)), "completion of a batterer's program" (§ 1203.097,

---

[11] Ruiz asserts that the fine imposed in *Southern Union*
was "a *probationary* fine." Nothing in the opinion, however,
suggests that the defendant was placed on probation or that
the fine was imposed as a term of probation. Indeed, the fine
is described in the statute that authorized it as a "[c]riminal
penalt[y]." (42 U.S.C. § 6928(d).)

subd. (a)(6)), and the completion of "appropriate community service" (§ 1203.097, subd. (a)(8)).  We need not address this contention, however, because, as Ruiz concedes, the court did not impose these conditions on him and neither he nor the prosecution objected to their omission below.

Ruiz further contends that the imposition of a probation term authorized by section 1203.097 and section 1203.1, subdivision (*l*) violates due process because he was not charged with violating section 1203.097.  He relies on *People v. Anderson* (2020) 9 Cal.5th 946.  In *Anderson*, the charging pleading did not allege that a particular firearm enhancement applied to five counts of robbery.  (*Id.* at pp. 949–950.)  The trial court nevertheless instructed the jury on the enhancement, which the jury found true.  (*Id.* at p. 951.)  The court then applied the enhancement to substantially increase the defendant's prison sentence.  (*Id.* at p. 952.)  Our Supreme Court reversed, holding that, as a matter of due process as well as statute, a "defendant has the 'right to fair notice of the specific sentence enhancement allegations that will be invoked to increase punishment for his crimes.' " (*Id.* at p. 953; see § 1170.1, subd. (e) ["[a]ll enhancements shall be alleged in the accusatory pleading and either admitted by the defendant in open court or found to be true by the trier of fact"]; § 12022.53, subd. (j) ["the existence of any fact required [to impose certain firearm enhancements] shall be alleged in the accusatory pleading and either admitted by the defendant in open court or found to be true by the trier of fact"].)  *Anderson,* however, did not involve the terms of probation, and nothing in the opinion supports Ruiz's assertion that the charging pleading must allege, and a jury must find, facts required to impose particular probationary terms or that

a court is precluded from determining such facts in setting such terms. (See *People v. Lent* (1975) 15 Cal.3d 481, 486 [the validity of probation conditions depends upon the relationship of the condition to the crime of which the offender was convicted, the relationship of the condition "to conduct which is not in itself criminal," and whether the condition "requires or forbids conduct which is not reasonably related to future criminality"].)

## C. The Court's Reliance on Probation Report

Ruiz contends that even if section 1203.097 provides an exception to the two-year maximum probation term under section 1203.1, subdivision (a), and the court's factfinding does not violate the principles established in *Apprendi* and *Alleyne*, the finding that the victim of Ruiz's crimes is a person defined in Family Code section 6211 is unsupported by admissible evidence.

The argument is without merit. "Once guilt has been determined, evidence which would be inadmissible on the issue of guilt may nevertheless be received as bearing on the punishment to be imposed." (*People v. Peterson* (1973) 9 Cal.3d 717, 725, citing *Williams v. New York* (1949) 337 U.S. 241.) The court may consider the "whole record in the case" (*People v. Fulton* (1979) 92 Cal.App.3d 972, 976) and the probation report, among other evidence (§ 1170, subd. (b)(4)). Sentencing "courts routinely rely upon hearsay statements contained in probation reports to make factual findings concerning the details of the crime" that "guide the court's sentencing decision." (*People v. Otto* (2001) 26 Cal.4th 200, 212–213; accord, *People v. Tran* (2015) 242 Cal.App.4th 877, 888, fn. 5 [the sentencing court may "consider and rely upon hearsay statements contained in a probation report"]; *People v. Baumann* (1985) 176 Cal.App.3d 67, 81 ["[p]robation reports are among the permissible sentencing data

23

the court may consider"]; *People v. Ingram* (1969) 272 Cal.App.2d 435, 439 [in determining whether to grant probation, court may consider all the facts and circumstances of the case as disclosed by the evidence and the probation report].)  Just as a court may rely on a probation report to determine defendant's sentence, a court may rely on that report to determine the terms of probation.  (§ 1203, subd. (b)(3) ["[a]t the [probation] hearing, the court shall consider any report of the probation officer"]; *Baumann*, *supra*, 176 Cal.App.3d at p. 81.)

Here, during the October 2020 sentencing hearing, the court, without objection, expressly relied on a probation report, which states that the victim of defendant's crime is his grandmother.  Although hearsay within a probation report must be reliable (*People v. Arbuckle* (1978) 22 Cal.3d 749, 754−755; *People v. Banda* (2018) 26 Cal.App.5th 349, 357), Ruiz never asserted that any statements in the probation report are unreliable or denied that the victim is his grandmother.  The court, therefore, could rely on the probation report in determining that the victim is a person described in Family Code section 6211.

## DISPOSITION

The petition for writ of mandate is denied.

The judgment is corrected to reflect that petitioner is sentenced on count 4 to three years in prison, to run concurrent to the sentence on count 2. This correction does not affect the court's suspension of sentence.

<u>NOT TO BE PUBLISHED</u>.


ROTHSCHILD, P. J.

We concur.



BENDIX, J.



WEINGART, J.

25